(No. 38073.—

ROBERT BOWMAN, Appellant, *vs.* THE COUNTY OF LAKE *et al.,* Appellees.

*Opinion filed Oct. 25, 1963.—Rehearing denied Nov. 26, 1963.*

PAUL E. HAMER, of Northbrook, for appellant.

BRUNO STANCZAK, of Waukegan, and ANDREW A. SEMMELMAN, of Lake Forest, for appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

This appeal, involving the revenue, is prosecuted by the plaintiff, Ralph Bowman, from orders of the circuit court of Lake County dismissing his complaint and amended complaint brought against the county of Lake, its clerk, its board of supervisors and the Lake County Public Building Commission, and from an order denying his motion to file a further amended complaint.

Pertinent factual background, gathered from the pleadings, briefs and exhibits, shows that by an election held on November 6, 1956, a majority of the voters of the county voted to eliminate the office of township collector. It was anticipated that the elimination would increase the earnings of the office of the county collector by approximately $500,-000 per annum and in anticipation of a favorable referendum, (and apparently as the result of public inquiry,) the county board of supervisors, on October 16, 1956, passed a resolution stating in substance that the money would be de-

voted to such needed "capital expenditures" and "expanded county services" as might be approved by the board, and that when the additional funds became available "no levy shall be approved by this Board, which when added to the balance on hand at the end of the fiscal year, plus anticipated earnings from other sources during that year, shall produce an amount in excess of the budgeted needs of Lake County."

The next event of consequence occurred on February 9, 1960, when, under authority of the Public Building Commission Act, (Ill. Rev. Stat. 1959, chap. 34, pars. 3301-3325,) the Lake County Public Building Commission was formed by the board of supervisors for the purpose of constructing a new county courthouse. Shortly thereafter, as authorized by section 13 of the act, (Ill. Rev. Stat. 1959, chap. 34, par. 3313,) the county entered into a contract with the commission to transfer the present courthouse land to the commission for use as a building site. On December 14, 1960, as the result of a representative suit brought by the State's Attorney in the name of and on behalf of the People, a decree was entered in the circuit court of Lake County which found that the commission was legally and properly constituted, that the county had the authority to transfer its land to the commission, that the contract between the county and commission was legal and binding, and that the act relating to transfers of real estate by municipal corporations (Ill. Rev. Stat. 1959, chap. 30, pars. 156-158a,) did not apply to the transfer. No appeal was taken from this decree.

On February 6, 1961, the board of supervisors conveyed the land to the commission. Thereafter, in their 1960-1961 appropriation ordinance, again proceeding under authority of section 13 of the Public Building Commission Act, the board made a cash grant of $200,000 to the commission, and in the 1961-1962 appropriation ordinance another cash grant of $450,000 was approved. These sums were in fact transferred to the commission in each of the fiscal years. The

1962-1963 appropriation ordinance approved a further cash grant of $500,000 and, as the matter comes to us, there are conflicting manifestations as to whether this sum has been transferred. In any event, it was on January 7, 1963, that plaintiff filed the taxpayer's suit which has provoked this appeal.

Plaintiff's original complaint was one for declaratory judgment but it was dismissed January 24, 1963, on motion of defendants and he was granted leave to file an amended complaint. Shortly thereafter, plaintiff filed an amended complaint in equity which, on May 8, 1963, was also dismissed on motion of the defendants. And while plaintiff now seeks review of both orders of dismissal, our consideration of the first order may be at once eliminated from the appeal. Where an amendment is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be a part of the record for most purposes, being in effect abandoned and withdrawn. (*Wright* v. *Risser,* 290 Ill. App. 576; *Cantow* v. *Foute,* 335 Ill. App. 574; see also: *Wende* v. *Chicago City Railway Co.* 271 Ill. 437; *Precision Extrusions, Inc.* v. *Stewart,* 36 Ill. App. 2d 30.) Here, an examination of the two pleadings leaves no doubt that the original complaint was abandoned and withdrawn. Indeed, plaintiff completely changed his form of action in the amended complaint.

The first count of the amended complaint, which we find to be replete with conclusions, first alleged the election eliminating the office of township collector and the resolution of the board, then alleged that the board had, since the elimination of such office, accumulated the additional funds realized in a surplus account without designating the purpose thereof, and that in each year since 1957 the board had levied taxes which "failed to utilize" the accumulation in the surplus fund. Other allegations set forth the creation of the Lake County Public Building Commission; that the board had transferred public funds and public land to the com-

mission; and that there is at the present time the sum of $500,000 accumulated in the surplus account, which sum the 1962-1963 county budget has earmarked for transfer to the commission. Continuing, the count alleged in substance that the accumulation of surplus funds was unlawful, an abuse of discretion, fraudulent, *ultra vires,* and in contravention of the 1956 resolution of the board; that the accumulation resulted in "appropriations" in excess of corporate needs; and that the transfer of funds to the commission was beyond the scope of the corporate authority.

The concluding paragraph of count I, which we set forth in full for purposes of subsequent discussion, alleged the following:

"That under the Public Building Commission Act (Ill. Rev. Stat., Chap. 34, Sec. 3318), the Lake County Board of Supervisors is required to levy a direct annual tax on the full, fair cash value of all real and personal property within Lake County, which is not exempt from taxation, which will be sufficient to pay the annual rent on the lease which the Lake County Board of Supervisors is about to enter into for the rent of a building to be erected on property formerly owned by the County of Lake; that since the amount of the annual rental fee is to be determined by the Public Building Commission, which in turn is determinative of the tax to be levied and collected, that the subject Section of the Public Building Commission Act is unconstitutional in that it grants the power to determine the amount of tax to an executive branch of the government; that under the circumstances hereintofore referred to, i.e., the transfer of public funds and lands to the Lake County Building Commission, the action required to be taken by the Lake County Board of Supervisors in levying the tax as aforesaid will result in two taxes for the same purpose in violation of the due process clause of the State and Federal Constitution; that the said tax will exceed the maximum fixed by statute without the required favorable vote at a referendum; that said tax is

for a general corporate purpose and must be included in the corporate purpose rate statutory limitation; that said tax will result in a rate in excess of the maximum rate prescribed by statute and the Illinois Constitution; and that the statute authorizing the levy of said tax is evasive of and in contravention of the Federal and State Constitutions."

Count II of the amended complaint realleged certain parts of count I, then alleged that the county had transferred funds totalling $650,000 and public lands valued at $1,000,000 to the commission, and charged that such transfers were unauthorized, illegal and void. A concluding paragraph repeated verbatim the concluding paragraph of count I heretofore quoted. The remaining count, count III, likewise alleged the transfer of cash and land to the commission and alleged, in substance, that the acceptance of land and cash from the county was beyond the scope of the statutory powers of the commission, and that their acceptance by the commission "is sanctioning a statute impairing the obligation of contract as evidenced by * * *" the county board's resolution of October 10, 1956.

At its conclusion the amended complaint alleged that plaintiff had no remedy at law as to each of the counts and prayed for injunctive relief restraining the county from accumulating funds and transferring funds to the commission; restraining the commission from accepting funds from the county; and directing the commission to restore and return to the county the funds and land it had already received.

Defendants filed a motion to strike the amended complaint and to dismiss the action for want of equity, alleging in substance that conclusions were pleaded in certain respects, that certain of the allegations were false, frivolous and incorrect statements of law; that plaintiff was guilty of *laches;* and that the prior decree approving the transfer of land to the commission was *res judicata* to that issue. Following hearing and argument, the trial court, after taking judicial notice of the Public Building Commission Act and

causing the prior decree, the October, 1956, resolution, and the pertinent appropriation ordinances to be made a part of the record, sustained the motion to strike and entered a final order dismissing the action. And while not stated in the formal order, the verbal ruling of the court which preceded the order admits of no doubt that the action was dismissed for want of equity.

Omitting for the moment any consideration of the allegations going to constitutional questions, and indulging in a most liberal construction of the amended complaint, it is one of plaintiff's theories under counts I and II that taxes levied by the county for the years 1957 to 1962 were illegal and void to the extent that they exceeded the county's appropriated needs. This theory, in turn, is founded upon the basic principle that taxes are levied to defray the necessary expenses of government rather than for a purpose of enriching the public treasury, and upon the repeated holdings of this court that taxing bodies may not levy taxes faster than they are needed and that an unnecessary accumulation of money in the public treasury is unjust, unpolitic and against the policy of the law. (*People ex rel. Kramer* v. *Chicago, Burlington and Quincy Railroad Co.* 8 Ill.2d 382; *People ex rel. Bergan* v. *New York Central Railroad Co.* 390 Ill. 30.) Applied here, it is plaintiff's position that in determining the county's needs and tax levies for each of the years in question the county authorities failed to take into consideration the extra fees realized by the county treasurer, and that the taxes for these years were excessive to the extent of such sums. In short, plaintiff does not attack the entire tax levied for county corporate purposes in those years, but only so much of the rates as permitted the accumulation subsequently granted to the commission, and we are told in his brief that the purpose of seeking equitable relief is to make the money granted to the commission available for "rebates to the taxpayer."

Even if it be assumed that the allegation of a surplus is

true and that the plaintiff's theory is properly pleaded, it is clear that this phase of his suit is a belated attempt to convert a court of equity into a forum for the trial of tax objections contrary to section 18 of article VI of our constitution, which provides that county courts shall have original jurisdiction in proceedings concerning collection of taxes, and to the provisions of sections 194 and 235 of the Revenue Act, (Ill. Rev. Stat. 1961, chap. 120, pars. 675 and 716,) wherein the legislature has provided a remedy for the recovery of taxes paid on real estate. Except when a tax is laid upon exempt property, or is not authorized by law, or is levied on a fraudulently excessive valuation, it is settled that equity will not interfere to enjoin the collection of a tax, or to prevent the proper expenditure of taxes already collected, unless special grounds for equitable jurisdiction exist, such as fraud, irreparable injury and cloud upon title, or unless the plaintiff does not have an adequate remedy at law. (*Lakefront Realty Corp.* v. *Lorenz,* 19 Ill.2d 415; *Lackey* v. *Pulaski Drainage Dist.* 4 Ill.2d 72; *Budberg* v. *County of Sangamon,* 4 Ill.2d 518.) If, on the other hand, the taxing power is present, but has been exercised in an erroneous or irregular manner, it gives rise merely to an erroneous or irregular tax, as distinguished from a tax wholly unauthorized by law, which will not be enjoined in equity. *Ames* v. *Schlaeger,* 386 Ill. 160.

No allegation is made in the amended complaint that the county lacked the authority to levy the taxes claimed to be excessive, or that the taxes were illegal *per se,* but the substance and effect of its many and arduous allegations is only that the tax officials improperly exercised their authority in such a manner as to cause an unnecessary accumulation of surplus funds. As we pointed out in *Lakefront Realty Corp.* v. *Lorenz,* 19 Ill.2d 415, under persuasively similar facts, such an objection raises only the issue of an irregular or erroneous tax, for which the Revenue Act provides an adequate remedy, and affords no basis for equitable relief.

Nor were the constitutional issues sought to be pleaded in counts I and II sufficient to entitle plaintiff to relief. Indeed, we believe the motion to dismiss aptly describes them as frivolous. As may be seen in complete detail from our previous quotation from the amended complaint, plaintiff's constitutional attack was directed to section 18 of the Public Building Commission Act, (Ill. Rev. Stat. 1961, chap. 34, par. 3318,) which requires and authorizes municipal corporations entering into leases with the commission to levy an annual tax sufficient to pay the annual rental due under the lease. And, in substance, the grounds of attack are: (1) that the section is unconstitutional in that "it grants the power to tax to an executive branch of the government;" (2) that the levying of the tax "will result in two taxes for the same purpose in violation of the due process clause of the State and Federal Constitution;" (3) that the tax will result in a county rate which will exceed the maximum rate authorized by statute and constitution; and (4) that the statute authorizing the levy of the tax "is evasive in contravention of the State and Federal Constitutions."

The allegation that the power to tax is granted to an "executive branch" of the government cannot withstand the inspection of law or logic. Apart from the fact that the commission is not a part of the executive branch of the county government, but a separate municipal corporation, (see: *People ex rel. Adamowski* v. *Public Building Commission of Chicago,* 11 Ill.2d 125,) to say that the commission is given the power to tax because it may determine the amount of rental which will be paid from tax monies is absurd. Carried to its logical conclusions, we would have to hold that any merchant or contractor who furnishes goods or services to a county is in effect determining the rate of tax and exercising taxing power by fixing the price to be paid for such goods or services. Furthermore, the commission has little, if any, discretion in determining how much the rental will be. Under the provisions of section 15

of the act, (Ill. Rev. Stat. 1961, chap. 34, par. 3315,) the rentals and charges to be established by the commission are limited to the amounts sufficient to pay maintenance and costs of operation, and to pay accruing interest and bonds at maturity. We believe it clear from this language of the legislature that the commission does not, and will not, either directly or indirectly, possess indiscriminate control or influence over the taxes to be levied by the municipal corporations leasing from it. Cf. *Berger* v. *Howlett,* 25 Ill.2d 128.

Equally without merit are the allegations that the levying of the tax will result in "two taxes for the same purposes," under the circumstance that the county has made cash grants to the commission. While plaintiff's brief gives us little assistance, and defendants' brief openly professes their lack of comprehension, it is apparently plaintiff's theory that the cash grants and rentals will be used for duplicate purposes putting the taxpayer in the position of being taxed twice for a single purpose. Stated differently, plaintiff's theory seems to be that the county will make cash grants for the complete payment of the new structure, and in addition levy a tax to pay rental for its use. Such a theory is ludicrous on its face and totally ignores the workings and purposes of the Public Building Commission Act under which the new structure will become the property of the county after twenty years. Far from being for a duplicate purpose, the necessary and ultimate effect of the cash grants and the conveyance of land by the county will be to reduce the rental obligation of the county and the tax burden for such rental. Furthermore, it is noteworthy that no lease has as yet been entered into between the county and the commission, and that no tax has as yet been levied for rentals. Necessarily, therefore, two taxes have not been levied for the same purpose, and as to future taxes the allegation of the complaint is a mere conclusion of the pleader.

Reaching deep to find some validity for his allegation of "two taxes for the same purpose," plaintiff points to the fact

that the county presently appropriates and levies for the maintenance and operation of the county building and argues that taxes levied to pay rental to the commission will be for the same purpose. Once again, however, this argument presumes that the county will continue to levy for maintenance and operation after those obligations pass to the commission. Should this occur, the taxpayer is not without a remedy under the Revenue Act. Finally, plaintiff points to the fact that the commission may lease space to State and Federal agencies and to other municipal corporations beside the county and rationalizes that because all of such prospective tenants are tax supported the result will be "double taxation." Not only does this argument misapprehend the recognized meaning of "double taxation," (see: *People ex rel. Toman* v. *Advance Heating Co.* 376 Ill. 158, 163,) but it is premised on a false foundation. Being taxed for rental of the space utilized by the county and indirectly for space used by some other governmental unit is not being taxed twice for the same purpose. Moreover, the practical effect of leasing part of the space to other governmental units will be to reduce the rental obligation of the county and the burden placed upon the taxpayer for such item.

Considering next the allegations that the levying of tax for rentals will cause the county corporate rate to exceed the maximum authorized by statute and constitution, it is patently obvious that these are mere conclusions of the pleader and which, even if true, would in no manner warrant the equitable relief prayed. It is to be presumed that the county authorities will act in a proper manner, (*Kankakee County Housing Authority* v. *Spurlock,* 3 Ill.2d 277,) and, what is more, the vague possibility that the rate necessary to pay the rental authorized by the Public Building Commission Act might in the future cause the total county rate to be excessive is no measure of the constitutionality of the act.

The last of the constitutional allegations, *viz.,* that the

statute authorizing the tax "is evasive in contravention of the Federal and State Constitutions," is insufficient to raise a constitutional question and, we would add, affords no basis for a wide ranging attack made in plaintiff's brief against the Public Building Commission Act in general, and the Lake County Public Building Commission in particular. Where the constitutional validity of a statute is assailed, the objection must be specific and complete. (*Lutkus* v. *Department of Finance*, 385 Ill. 221; *Pierce* v. *Carpentier*, 20 Ill.2d 526.) At best this allegation of the complaint amounts to no more than a generalized charge of unconstitutionality. Cf. *Jewel Tea Co.* v. *Rowe*, 414 Ill. 495.

It may be conceded that equity will intervene on timely application, once a tax has been collected, to prevent a misappropriation of the fund, (*Gates* v. *Sweitzer*, 347 Ill. 353, 363; *People ex rel. Smith* v. *Hassler*, 262 Ill. 133, 137,) but it is likewise true that equity, in all cases where a mandatory injunction is sought, will strictly require that the application for relief be promptly made and holds that a failure to assert such right without a sufficient excuse therefor, until after the expenditure of large sums of money, operates as a bar to relief. (*Carstens* v. *City of Wood River*, 344 Ill. 319, *Haas* v. *Commissioners of Lincoln Park*, 339 Ill. 491.) Measured by the latter rule, we think it clear that the effort of count II to recover the cash grants previously appropriated for and delivered to the commission comes too late. And, without going into considerations of *res judicata*, estoppel by verdict or collateral attack raised by the prior decree, we believe the same conclusion is to be reached insofar as the count attempts to compel a reconveyance of the land. All of these events were a matter of public record and known to plaintiff, and no sufficient excuse is shown for the delay which ranges one, two and three years respectively. In addition, there is yet another reason why relief is not forthcoming under this count. Its bare allegations that the

county had no authority to transfer funds or land to the commission, and that such transfers were illegal, are met by the language of section 13 of the Public Building Commission Act, (Ill. Rev. Stats. 1959, 1961, chap. 34, par. 3313,) wherein the legislature expressly authorizes cash grants and the donation of real property to a commission. For the same reason, the allegations of count III that the commission had no authority to accept the grants and the land affords no basis for relief.

In count I of the amended complaint it is alleged that the accumulation of surplus funds was "contrary to" the board's resolution of October 10, 1956, while it is alleged in count III that the acceptance of public funds and land by the commission "is sanctioning a statute impairing the obligation of contract" as evidenced by the board's resolution. These theories, however, have not been pursued in this court by argument and citation of authority and we deem them to have been waived. *City of Lawrenceville* v. *Maxwell,* 6 Ill.2d 42; *People ex rel. Carter* v. *Touchette,* 5 Ill.2d 303.

Plaintiff's further contention that the trial court committed an abuse of discretion in denying his request to amend the amended complaint is not well taken. The test to be applied in determining whether discretion with respect to allowance of amendment to pleadings was properly exercised is whether it furthers the ends of justice and, in such regard, the court may properly consider the ultimate efficacy of a claim in passing on a motion for leave to amend. (*Deasey* v. *City of Chicago,* 412 Ill. 151.) Here, at the expense of delaying an urgent public project, plaintiff was afforded two opportunities to assert his claims, and we see no manifest abuse of discretion in denying him a third attempt, particularly since nothing was presented to show the materiality of the proposed amendment. (Cf. *Old Salem Chautauqua Assn.* v. *Illinois District Council of the Assembly of God,* 13 Ill.2d 258.) As we stated in the *Deasey* case

(p. 157) : "Justice is not served by fruitless expenditure of time and effort by our courts, their officers and litigants."

The record shows that shortly after the original complaint was filed, Judge Moran, before whom the matter was first taken, disqualified himself and the other judges of the Nineteenth Judicial Circuit from hearing the case and assigned it to Judge Abrahamson of an adjoining circuit. No objection was made by plaintiff to such assignment. Defendants filed a motion to dismiss and, after a hearing, Judge Abrahamson dismissed the complaint and granted leave to file an amended complaint. After plaintiff had filed his amended complaint, and after defendants had filed a further motion to dismiss, plaintiff requested and was granted a change of venue from Judge Abrahamson, whose order assigned the cause to Judge O'Sullivan. Plaintiff now asserts that Judge Moran lacked authority to assign the matter to Judge Abrahamson, and that the latter was without authority to assign it to Judge O'Sullivan. While we think it is entirely questionable as to whether plaintiff has the standing to raise these claims, (see: 48 C.J.S., Judges, sec. 97; *Commissioners of Drainage Dist. No. 1 v. Goembel,* 383 Ill. 323,) it is sufficient to say we find them moot in view of the showing of the record that the matter was ultimately heard by Judge O'Sullivan upon assignment by the administrator of this court.

Plaintiff next urges that he was denied the fair and impartial trial contemplated by the constitutional guarantee of due process of law because the trial judge made a private investigation by taking judicial notice of public documents not presented in open court, because the judge was biased and prejudiced against him, and because the assistant State's Attorney appearing for defendants was elected to and assumed the office of police magistrate on or about May 1, 1963, (three days before the hearing on the motion to dismiss the amended complaint,) but nonetheless continued to

represent the defendants. The first of these contentions is not supported by the record which shows that Judge O'Sullivan, without objection by plaintiff, caused the prior decree, the pertinent appropriation ordinances and the October, 1956, resolution to be incorporated into and made a part of the record. Nor do we find substance to the charge of bias and prejudice. While the record may show some understandable impatience with counsel's persistent efforts to continue arguments after rulings had been made by the court, it likewise shows that counsel was afforded a full hearing on all matters properly raised. Finally, and without reaching the collateral question of whether the assistant State's Attorney who was elected to the office of magistrate should have withdrawn in the middle of the case, plaintiff's claim of unfairness because one member of the judiciary might be expected to favor or be reluctant to rule against another member of the judiciary borders on the ridiculous under the circumstances of this case. Furthermore, as we have pointed out, the trial court was completely correct in his finding that the amended complaint was without equity.

The decree of the circuit court of Lake County is affirmed.

*Decree affirmed.*