GERARD E. TANNER, Plaintiff-Appellant, *v.* THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, Defendant-Appellee.

Fourth District No. 4—83—0425

Opinion filed January 18, 1984.—Rehearing denied February 21, 1984.

James A. Martinkus, of Erwin, Martinkus, Cole & Ansel, Ltd., of Champaign, for appellant.

Charles L. Palmer, of Franklin, Flynn & Palmer, of Champaign, and James J. Costello and Timothy Madigan, both of Office of University Counsel, of Urbana, for appellee.

JUSTICE GREEN delivered the opinion of the court:

Plaintiff, Gerard E. Tanner, appeals a judgment of the circuit court of Champaign County entered on June 1, 1983, after a bench trial, refusing to issue a writ of *mandamus* ordering defendant, the Board of Trustees of the University of Illinois, to award to plaintiff a degree of doctor of philosophy in business. We affirm.

Plaintiff filed a two-count complaint in the circuit court of Cook County on August 4, 1975. Both counts alleged that plaintiff had enrolled as a graduate student at the University of Illinois, Urbana-Champaign campus, and had completed the requirements for the doctorate sought. One count requested that defendant be ordered to issue the degree. The other count sought monetary damages for defendant's wrongful denial of the degree. Upon defendant's motion, the venue was transferred to Champaign County. On defendant's motion, both counts were dismissed on February 15, 1976. On appeal this court held that the *mandamus* count stated a cause of action and reversed and remanded as to that count. The judgment on the count for money damages was affirmed on the theory that such an award could properly be awarded only in the court of claims. *Tanner v. Board of Trustees* (1977), 48 Ill. App. 3d 680, 363 N.E.2d 208.

Upon remand, and after various preliminary rulings were made, a bench trial commenced on May 26 and 27, 1982, with evidence being heard upon a second amended complaint sounding only in *mandamus*. Nearly a year later, on April 27, 1983, further evidence was presented and on April 28, 1983, oral arguments were heard and the court pronounced a ruling which was reduced to a written judgment denying

relief and filed on June 1, 1983.

On appeal, plaintiff maintains (1) the trial court abused its discretion in finding that defendant required a candidate for a doctorate to submit to oral preliminary examination; (2) even if such requirement existed, defendant had waived the requirement or was estopped from enforcing it; (3) the trial judge denied plaintiff a fair hearing because it failed to review all of the evidence; and (4) plaintiff was denied a fair hearing because the trial court refused to require counsel for plaintiff to withdraw from the case.

The thrust of plaintiff's case is based upon our language in deciding the case in the previous appeal. We said:

"Although we recognize that the University is under a discretionary and not a mandatory duty to issue degrees to persons participating in its curricula *** the University may not act maliciously or in bad faith by arbitrarily and capriciously refusing to award a degree to a student who fulfills its degree requirements." (*Tanner v. Board of Trustees* (1977), 48 Ill. App. 3d 680, 682-83, 363 N.E.2d 208, 209-10.)

Plaintiff testified to certain conduct by faculty members which would have been arbitrary and capricious. However, these allegations were strongly denied by either the persons involved or other witnesses. The trial court could properly have rejected this testimony, and we see no purpose in repeating it here. In the succeeding paragraphs we set forth the evidence, omitting plaintiff's testimony which was denied by credible testimony and which could have been rejected by the trier of fact.

The evidence showed that the program for obtaining a degree of doctor of philosophy usually has three stages. In the first stage the candidate (1) is accepted by the school, (2) obtains an advisor from the faculty, (3) with the guidance of the advisor, selects certain classroom study to undertake, (4) completes the courses, and (5) takes a comprehensive examination covering those courses. In the second stage, the candidate undergoes preliminary examinations to determine whether the candidate is knowledgeable in his selected field and likely to be able to write a worthwhile thesis. In the third stage the candidate performs the research, writes a thesis, and defends it before a committee selected to examine the candidate. If the candidate successfully defends his thesis and it is accepted by the committee, the candidate has completed requirements for the degree.

The evidence is undisputed that plaintiff was accepted by the defendant institution for its Ph.D. program in business, took the various courses agreed upon, passed those courses with high grades and

was excused from taking the comprehensive examinations. The major dispute concerns plaintiff's performance on the oral examination, preliminary to his writing his thesis.

In seeking the Ph.D. in business, plaintiff selected management science as his "major area" of study and statistics as his "minor area." Richard Evans was the leader of the faculty group interested in management science.

In September 1972, Evans asked plaintiff to select a preliminary examination committee who would give him those examinations. Plaintiff selected his advisor, Vjvijay Marathe, Walter Rom, and Donald Roberts. Marathe and Rom specialized in management science, while Roberts specialized in statistics. Plaintiff originally planned to take the exams in October, but Evans suggested that December would be a better time. The committee decided to have each of the members prepare written questions to be given to plaintiff to answer in the week between Christmas and New Year's Day with oral examination to follow. Marathe and Rom were to submit questions concerning management science, while Roberts' questions were to be on the subject of statistics. Marathe and Rom submitted their questions at the proposed time, but Roberts did not submit his questions.

While awaiting the preliminary examinations, plaintiff had secured employment as a lecturer at the University of Illinois at the Chicago Circle campus which was to begin in January 1973. In early January, plaintiff left for the new job after having obtained a waiver of the requirement that a doctoral candidate remain in residence until preliminary examinations had been completed. For this and other reasons, plaintiff made several requests to Roberts to give him Roberts' portion of the written examination. In March, plaintiff made a request to Marathe that Roberts be removed from the committee. A few days later Roberts submitted an examination and plaintiff completed it. Oral examinations were set for April and plaintiff made preparations, but a few days before the scheduled date Roberts said he was unavailable. A June date was set, but Roberts would not participate then. The oral preliminary examination was finally given on August 25, 1973.

The parties do not dispute that plaintiff did not do well on the questions asked by Roberts. The questions concerned the field of statistics which was plaintiff's minor area of study. The examination was halted at this point. The committee decided to allow plaintiff a second examination. That examination was conducted in Marathe's office. Plaintiff was unable to answer certain of Roberts' questions, and Roberts became frustrated. The committee offered plaintiff the alter-

native of presenting a paper in a classroom setting, but plaintiff rejected this on the basis that he had already demonstrated his teaching ability. Roberts then left the committee and plaintiff was given the option of preparing a paper to be evaluated by the committee or taking a new comprehensive "written exam." Although the proposal presented to plaintiff called for the examination to be available in January 1974, it was not available until March of that year and when offered, the department of business took the position that the examination should have to be followed by an oral examination. The department later offered the alternative of an in-class examination to last a maximum of six hours. Plaintiff rejected the offer.

After the offer of an in-class written examination was rejected, further negotiations took place, but were futile and this litigation ensued.

In its findings the trial court noted:

> "[T]hroughout all of this, it's obvious that so far as the University was concerned, he [Tanner] must be in some manner successful in these oral prelims."

Plaintiff contends that this finding was not supported by the evidence because no catalog sent by the department to prospective Ph.D. candidates for the 1971-72 school year set forth that oral examination was a necessary part of the preliminary examinations. Plaintiff maintains that the failure of that particular catalog to provide for preliminary oral examination prevented the defendant from making that requirement. Plaintiff relies on the rule that the catalog of a university forms the basis of the contract between the pupil and the university. *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 371 N.E.2d 634; see *Wilson v. Illinois Benedictine College* (1983), 112 Ill. App. 3d 932, 445 N.E.2d 901.

■ Here, plaintiff admitted at trial that before he started the preliminary examination process, the faculty had explained to him and he understood that part of the preliminary examination would be oral. He proceeded with the preliminary examination process without complaint as to this requirement and the faculty continued to work with him on this basis. Thus, any original contract between the parties that included the terms of the catalog was modified by plaintiff's tacit assent to the proposed procedure. Substantial evidence was presented that in practice the department of business did require an oral examination as part of the preliminary examination. On the basis of the foregoing evidence the trial court (1) did not abuse its discretion in finding that defendant did require oral examination as part of the preliminary examination, and (2) was not in error in ruling that defend-

ant was not prohibited from imposing the requirement.

Plaintiff asserts that defendant's faculty waived any requirement for preliminary oral examination by (1) permitting an undue lapse of time between the written and oral preliminary examinations, (2) also permitting an undue disparity of time between the preliminary examinations in the "major area" and the "minor area," (3) allowing plaintiff to work on his thesis prior to passing the preliminary examinations, and (4) promoting him at the Chicago Circle campus to the rank of assistant professor without requiring completion of those examinations. He also maintains that defendant was estopped to deny him his doctorate because the conduct of the faculty members involved was arbitrary and capricious.

■ The trial court heard the evidence in regard to waiver and estoppel. A substantial case was made that Roberts was dilatory in fulfilling his function on the committee and that the examining committee lacked firm leadership. However, much of the time lag may well have resulted from (1) the concession to plaintiff which allowed him to leave the campus before completion of his preliminary examinations, and (2) plaintiff's unwillingness to cooperate with attempts to reach a reasonable solution to the problem. Considering all of the evidence, the trial court was not required to find the conduct of defendant's faculty to be arbitrary or unreasonable.

Neither the concession permitting plaintiff to leave the campus, nor a concession permitting him to start on his thesis should operate as a waiver or an estoppel. No evidence gave any indication that defendant's faculty misled plaintiff into relying on the fact that he would not have to complete his preliminary oral examinations. The trial court's rejection of plaintiff's theories on waiver and estoppel was not contrary to the manifest weight of the evidence.

■ In upholding the trial court's determination that defendant's faculty was not arbitrary and capricious in its dealings with plaintiff, we have considered the reluctance of courts to intervene in matters concerning awards for academic achievement. (*Olsson v. Board of Higher Education* (1980), 49 N.Y.2d 408, 426 N.Y.S.2d 248, 402 N.E.2d 1150; *Goldberg v. Board of Regents* (1979), 43 Colo. App. 340, 603 P.2d 974.) Because of the discretion properly possessed by defendant's faculty in the matter and the lack of a clear right by plaintiff to the degree, the trial court did not err in denying *mandamus. People ex rel. Hamer v. Board of Education* (1974), 22 Ill. App. 3d 130, 316 N.E.2d 820; *People ex rel. McGrady v. Carmody* (1968), 104 Ill. App. 2d 137, 243 N.E.2d 19.

In August 1982, the trial judge who had heard most of the evi-

dence, recused himself. A new judge was assigned. That judge conducted a pretrial conference on March 4, 1983, heard further evidence on April 27, 1983, and heard closing arguments on the next day. The judge then pronounced judgment. Prior to doing so, the judge stated:

"Well, gentlemen, yesterday I indicated I was not going to rule on this today. However, I took the transcript home with me and I set up past my usual bedtime and read the transcript of Mr. Tanner's testimony.

I find—actually what happened, I had not read the cross-examination of Mr. Tanner, and what I'm saying is, I'm going to rule this morning, to move the case along."

Plaintiff maintains that the foregoing statement indicates that the judge had not read the entire transcript. We disagree. The statement does not necessarily indicate that the court had not previously read the transcript. It could be taken as meaning that the judge read the transcript of plaintiff's testimony the night before because he had not previously read the portion of that transcript containing the cross-examination of plaintiff. We note that in the formal order entered, the court stated that it had reviewed the transcript of the evidence taken before the previously presiding judge. The record does not show that the new judge gave insufficient consideration to the case.

An additional problem arose in this case because of the length of time that elapsed from the filing of the complaint to the judgment on appeal. When the venue was changed to Champaign County, the predecessor firm to plaintiff's present law firm was retained. Gary Lietz was employed by that firm as an attorney and did certain work on the case. In June of 1979, Lietz left that firm and joined a firm not involved in the litigation. Then in June 1982, he went to work with counsel for defendant. The only hearing held in the instant case after that time, other than the March 4, 1983, pretrial conference, was that on April 27 and 28, 1983, when plaintiff was allowed to reopen his case and present the testimony of Roberts and plaintiff. Defense counsel did not present any evidence, but did cross-examine Roberts and plaintiff.

On April 27, 1983, prior to the evidentiary hearing, plaintiff made a motion to disqualify defendant's counsel on the basis that Lietz' addition to defense counsel's firm created a conflict of interest for that firm. The motion was supported by plaintiff's affidavit stating in general terms that Lietz had been given confidential information. Lietz filed a counteraffidavit stating that he had attended three hearings on pleadings in the case, but could not remember participating in any discovery except to obtain documents requested by plaintiff. Lietz fur-

ther swore that (1) he did not recall hearing, obtaining, or discussing any confidences or privileged information, and (2) since joining the defendant's counsel's firm he had not discussed any substantial matters of the case with defense counsel, nor done any work on the case. Defense counsel, Charles L. Palmer, presented his affidavit confirming Lietz' denial of having any discussion of substance of the case with Palmer. Palmer alleged that plaintiff's counsel had known of Lietz' affiliation with defense counsel's firm since June 1982, but had made no motion for disqualification until the date of the hearing. The trial court denied the motion.

Rule 5—105(a) and (d) of the Code of Professional Responsibility, adopted in 1980, provides:

> "(a) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment ***.
>
> * * *
>
> (d) If a lawyer is required to decline employment or to withdraw from employment under Rule 5—105, no partner, or associate, or any other lawyer affiliated with him or his firm, may accept or continue such employment." 87 Ill. 2d R. 5—105(a), (d).

Prior to the adoption of the above rule, this court had held that where a husband had discussed his marital problems with a lawyer and that lawyer later filed a petition for separate maintenance on behalf of the wife, the lawyer had a conflict of interest which precluded his continued representation on behalf of the wife. (*King v. King* (1977), 52 Ill. App. 3d 749, 367 N.E.2d 1358.) Although the husband's undisputed affidavit there stated that confidential matter had been disclosed to the lawyer, we stated that the holding would have been the same even though no confidential information had been given.

Complex problems arise when an attorney leaves one firm to join another. In many instances, there will be some litigation pending between the firms. Here, the attorney causing the alleged conflict of interest, Lietz, had spent a period of time with an intervening firm before joining defense counsel's firm. Because, Lietz had actually participated earlier on behalf of plaintiff, the claimed conflict is more than vicarious. However, plaintiff's affidavit made no showing of diligence in complaining of the conflict of interest, and the affidavit of Palmer which stated that plaintiff's attorneys had known of Lietz' entry into Palmer's firm since July 1982 was not denied. Under these circumstances, we need not make a definitive holding on this difficult

subject because we conclude that plaintiff waived the issue by not raising it earlier, preferably at the pretrial conference on March 4, 1983. *Mullaney, Wells & Co. v. Savage* (1980), 78 Ill. 2d 534, 402 N.E.2d 574.

In holding waiver to have occurred, we consider that there was no showing of actual prejudice to plaintiff. Our ruling is not to be taken to mean that lack of prejudice would cure a conflict of interest if timely raised.

Our affirmance is for the reasons stated.

Affirmed.

MILLS, P.J., and TRAPP, J., concur.