PREMIER ELECTRICAL CONSTRUCTION COMPANY, Plaintiff-Appellant, v. THE CITY OF CHICAGO, Defendant-Appellee.

First District (3rd Division)   No. 86—2931

Opinion filed July 29, 1987.

Patrick Mazza, Arthur L. Klein, and Mark E. Enright, all of Arnstein, Gluck, Lehr & Milligan, of Chicago, for appellant.

Judson H. Miner, Corporation Counsel, of Chicago (Ruth M. Moscovitch and Julie Elena Brown, Assistant Corporation Counsel, of counsel), for appellee.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff Premier Electrical Construction Company appeals from an order dismissing its breach of contract action against defendant city of Chicago for failure to state a cause of action. The underlying contract dispute concerns plaintiff's right as a general contractor to substitute a type of equipment different than the equipment specified in the contract without defendant's approval.

On November 16, 1984, defendant advertised for sealed bids for a construction contract to improve the airfield lighting control tower at O'Hare International Airport. On May 7, 1985, defendant awarded the contract to plaintiff. Defendant directed plaintiff to begin work on June 3, 1985, and to complete the project on December 5, 1985.

On May 22, 1985, defendant asked plaintiff for a list of its material suppliers for approval. On June 12, 1985, plaintiff submitted the list, specifying Texas Instruments as supplier of various lighting equipment, and requesting defendant's approval of the list. On June 19, 1985, defendant sent plaintiff a document acknowledging receipt of the list of suppliers. The document indicates under "Disposition" that defendant "will keep this information on file." Under "Action Required—Conditions of Approval," the document states that equipment must be in full compliance with the contract plans and specifications, and that the acknowledgement "does not relieve you, as general contractor, from any responsibility for compliance with the terms of this contract."

On July 23, 1985, plaintiff submitted shop drawings and product information to defendant, again listing Texas Instruments as the supplier of certain lighting equipment. On August 14, 1985, defendant wrote to plaintiff, informing it that the Texas Instruments equipment could not be substituted for the Cutler-Hammer, Eaton Corporation lighting equipment required by the contract. An August 15, 1985, mailgram to defendant requested a detailed explanation of its rejection of plaintiff's proposed supplier.

On August 19, 1985, defendant wrote to plaintiff, rejecting Texas Instruments as a supplier on the basis that plaintiff had failed to sub-

mit the proper documentation seeking approval 14 days prior to bid opening, as required by section L—100.2.8 of the contract, which provides:

"Any exception, change or modification of the requirements of the specifications contained hereinafter will be cause for unequivocal rejection of the manufacturer's offered equipment. However, in order to allow sufficient time for the engineer to evaluate the type and quality of equipment and system competency being offered under this Item by the manufacturers, any manufacturer intending to bid shall submit in writing to the Commissioner of Public Works—City of Chicago, fourteen (14) days prior to the date set for the opening bids on this project the following descriptive literature and drawings for all equipment being offered under this item:

1. Specifications, literature and drawings showing general dimensions of all equipment offered.

2. Interconnections, and wiring arrangements for such equipment, accessories and systems.

3. Shop drawings showing the individual system schematics of the equipment.

4. List of all equipment offered.

5. Furnish written guarantee that this equipment will perform equally or better as the designed system per technical specifications."

Defendant directed plaintiff to submit documentation for the specified system by September 11, 1985. Failure to do so would indicate plaintiff's "unwillingness to pursue and complete this project prior to the completion date of December, 1985."

On September 6, 1985, defendant notified plaintiff that the matter had been referred to defendant's purchasing agent for a final decision. On October 30, 1985, the purchasing agent informed plaintiff that the Texas Instruments system was not acceptable because it was not specified in the contract, and because plaintiff had not sought defendant's approval for an "equal" either prior to or at the time of the bid opening. Plaintiff was given 10 days from receipt of the letter to comply with the contract specification or be considered in default of the contract. Plaintiff received the letter on November 4, 1985.

Plaintiff initially appealed to the Federal Aviation Administration, which found that defendant had not violated any Federal law or regulation by specifying a brand name "or equal" in its contract.

On November 12, 1985, plaintiff filed an action against defendant and the FAA in Federal district court, alleging violation of Federal

procurement regulations and breach of contract. On December 2, 1985, the district court dismissed defendant as a party in that case for lack of Federal jurisdiction.

On December 3, 1985, plaintiff filed this action seeking injunctive and declaratory relief. On December 4, plaintiff filed a motion for a temporary restraining order (TRO) to enjoin defendant from declaring plaintiff in default on the contract or employing another contractor to complete the work. On December 4, the trial court denied the motion.

On December 5, 1985, plaintiff delivered a written notice to defendant stating that it would use the Cutler-Hammer, Eaton Corporation equipment as specified in the contract. The letter stated that such performance was "under PROTEST." Plaintiff requested an additional $239,639 as compensation for the contract "change." Plaintiff also requested an extension of time for completion of the project. Finally, plaintiff informed defendant that "[s]hould the system fail to perform, we suggest that you look to your engineers for resolution." Later that day, defendant served plaintiff with notice declaring plaintiff to be in default on the contract pursuant to the 10-day notice issued on October 30, 1985. Plaintiff again stated it would install the equipment as requested by defendant, but defendant refused the offer.

On December 16, 1985, plaintiff again filed an unsuccessful motion for TRO. Plaintiff also filed an amended complaint, adding allegations concerning defendant's refusal to permit plaintiff to install the requested equipment. On June 13, 1986, the amended complaint was dismissed. Plaintiff filed a second amended complaint on July 11, 1986, and on September 25, 1986, the trial court dismissed the complaint without leave to refile.

██ Plaintiff contends that the trial court erred in dismissing its complaint for failure to state a cause of action. Pleadings should be liberally construed, but the complaint must allege facts necessary to state a cause of action. (*Parrillo v. 1300 Lake Shore Drive Condominium* (1981), 103 Ill. App. 3d 810, 431 N.E.2d 1221.) Basic legal deficiencies in a pleading cannot be aided by a general rule of liberal construction. (*Consentino v. Price* (1985), 136 Ill. App. 3d 490, 483 N.E.2d 297.) A cause of action for breach of contract must allege the existence of the contract, plaintiff's performance of all required contractual conditions, the facts of the alleged breach, and consequential damages. (*Martin-Trigona v. Bloomington Federal Savings & Loan Association* (1981), 101 Ill. App. 3d 943, 428 N.E.2d 1028.) The complaint here fails to sufficiently allege plaintiff's performance of all contractual conditions required of it, or defendant's breach of the contract.

■ The complaint sets forth four causes of action, all of which allege breach of contract. Count I, entitled "Breach of Contract/Withdrawal of Approval," alleges that defendant initially approved and then without justification rejected plaintiff's proposed substitution of Texas Instruments equipment for the equipment specified in the contract. Plaintiff relies on section 106.2 of the contract, which provides that the contractor shall notify defendant "as soon as possible after the Contract has been awarded of the source (or sources) from which he expects to obtain the various construction materials." Defendant shall approve the source "before delivery is started. If sources previously approved are found to be unacceptable at any time" by defendant, the contractor must furnish materials from other approved sources.

Plaintiff argues that once defendant had approved the list of proposed suppliers, "it had to make a good faith finding that the materials were inadequate in some way before it could reject the approved supplier." The plain language of the contract states otherwise. Defendant retains the right, under the contract, to withdraw its approval of any source "found to be unacceptable at any time."

Moreover, the alleged facts do not sufficiently support plaintiff's assertion that defendant ever approved plaintiff's proposed substitution of suppliers. Plaintiff points to the June 19, 1985, communication which indicated defendant would keep the information regarding plaintiff's material supplies "on file." That phrase is insufficient to support an allegation that defendant actually approved the substitute. This is especially true in light of the contract language requiring descriptive literature and drawings for all equipment offered as substitutes. Plaintiff apparently and incorrectly argues that the inclusion of Texas Instruments' name on a list is the equivalent of the descriptive literature and specifications called for in the contract.

In addition, the same document relied upon by plaintiff expressly states, under "Action Required—Conditions of Approval," that material must be furnished by a supplier "in full compliance with the contract plans and specifications." Defendant's "action does not relieve you, as general contractor, from any responsibility for compliance with the terms of this contract."

The contract terms specified that the lighting control panel "shall be Cutler-Hammer, Eaton Corporation or approved equal." Under section L—100.2.8 of the contract, whether a substitute source was an "equal" depended upon plaintiff's submission "in writing to the Commissioner of Public Works—City of Chicago, fourteen (14) days prior to the date set for the opening bids on this project the following de-

scriptive literature and drawings." Plaintiff never submitted such descriptive literature or drawings, or requested approval for its proposed substitution prior to the date set for opening bids. Plaintiff, therefore, has failed to sufficiently allege facts which show that defendant wrongfully approved, and then subsequently rejected, a proposed substitute. Consequently, the trial court properly dismissed count I, which alleges that defendant wrongfully withdrew its prior approval, for failure to state a cause of action.

■ In combining much of its argument, plaintiff states that counts I, III and IV all "deal generally with the proposition that the City breached the contract by refusing to consider [plaintiff's] proposed use of Texas Instruments equipment as an 'equal' to the Cutler-Hammer equipment." We agree that these three counts are based upon the same general proposition. For the reasons stated in reference to count I, therefore, we find that count III, alleging that defendant wrongfully refused to approve the proposed substitute, and count IV, alleging that defendant wrongfully refused to permit plaintiff to submit proposed material and equipment after the contract had been awarded, suffer from the same basic deficiencies as count I and were properly dismissed.

Count II, entitled "Breach of contract/Repudiation of Anticipatory Breach," alleges that defendant wrongfully refused to allow plaintiff to install the Cutler-Hammer, Eaton equipment when it agreed to do so. Plaintiff maintains that it "never manifested an intention not to perform according to the contract." Instead, plaintiff "consistently manifested an intention to abide" by the contract terms, and "the facts alleged demonstrate that plaintiff always intended to abide" by those terms. Furthermore, even if plaintiff's actions were construed as an anticipatory breach, "it is clear that plaintiff retracted that breach before defendant materially changed its position." Moreover, under section 17 of the contract, plaintiff was not in default because it "tendered performance before it was declared in default."

■ Plaintiff's contention that it offered to correct any possible error in refusing to use the specified equipment is not supported by the record. After the Federal court dismissed the cause against defendant, and after the trial court denied plaintiff's motion for a TRO and dismissed the complaint, plaintiff made a proposal to defendant. Plaintiff offered to use the specified equipment with several added conditions. Plaintiff demanded an additional $239,639, which was more than a 50% increase in the contract price. Plaintiff also requested additional time, in violation of the 185-day completion clause and the "time is of the essence" clause. The contract's delay provision

only applied to delays caused by defendant's conduct or other unavoidable circumstances, and thus did not apply to plaintiff's voluntary delay. Plaintiff also directed defendant to look to its own engineers if the required equipment failed, which violated the guarantee provisions of the contract which required a one-year guarantee of all work against defective materials and workmanship, improper performance, and noncompliance with the contract documents, and which requires the contractor to repair and replace at its own expense. Defendant's refusal of the offer cannot fairly be characterized as preventing plaintiff from correcting its own errors. See *Corbetta Construction Co. of Illinois, Inc. v. Lake County Public Building Com.* (1981), 64 Ill. App. 3d 313, 381 N.E.2d 758.

■■ Plaintiff's reliance on *B & C Electric, Inc. v. Pullman Bank & Trust Co.* (1981), 96 Ill. App. 3d 321, 421 N.E.2d 206, is misplaced. In that case, the subcontractor disputed its responsibility to provide temporary lighting, but it continued to perform in accordance with the contract in a timely manner for over one year after the dispute began. Plaintiff's reliance on *Commonwealth Edison Co. v. Decker Coal Co.* (N.D. Ill. 1985), 612 F. Supp. 978, is also misplaced. In that case, the erring party conceded it had made a mistake in a single communication during lengthy negotiations. In contrast, plaintiff here persisted in disputing the contract specification, delayed its performance, and attempted to substantially modify the contract after defendant found it to be in default. The trial court properly dismissed count II of the complaint for failure to state a cause of action.

For the foregoing reasons, the judgment of the circuit court of Cook County dismissing plaintiff's complaint for failure to state a cause of action is affirmed.

Judgment affirmed.

RIZZI and FREEMAN, JJ., concur.