DAVID NUCCIO, Plaintiff-Appellee, v. CHICAGO COMMODITIES, INC., Defendant-Appellant.

First District (5th Division)   No. 1—92—3644

Opinion filed December 30, 1993.—Rehearing denied January 27, 1994.

Bruce C. Davidson, of Chicago, for appellant.

Thomas D. Murray and Don A. Norton, both of Levinson, Murray & Jensen, P.C., of Chicago, for appellee.

JUSTICE MURRAY delivered the opinion of the court:

Plaintiff, David Nuccio (Nuccio), brought this action for allegedly due wages, based on a labor department proceeding, or alternatively, employment or other contract. Defendant, Chicago Commodities, Inc. (CCI), filed affirmative defenses and a counterclaim.

Plaintiff moved to dismiss the counterclaim. The trial court allowed plaintiff's motion. Three subsequent counterclaims were filed. The first and second amended counterclaims were stricken with leave to amend, and the third amended counterclaim was dismissed with prejudice. The trial court entered Rule 304(a) findings with respect to the dismissal order, making the otherwise nonfinal order appealable. (See 134 Ill. 2d R. 304(a).) CCI filed this timely appeal raising

the issue of whether the third amended counterclaim states a cause of action.

After appellate proceedings commenced, plaintiff moved in the trial court for disqualification of defense counsel based upon an alleged conflict of interest between defense counsel and plaintiff. The conflict was alleged to stem from a 1986 meeting between plaintiff and defense counsel. Defendant brought a motion for resolution of the disqualification issue in this court. This court ruled that the motion would be taken with the case.

Accordingly, the following issues are before this court. First, whether plaintiff has stated adequate cause for disqualification of defense counsel and, second, whether the third amended counterclaim sufficiently states a cause of action.

The relevant facts of this case are as follows. Nuccio was a commodity broker associated with CCI. CCI was engaged in the trading business. A dispute arose between the parties in connection with the account of Dr. Marva Graham, a commodity trader who had dealings with Nuccio. Nuccio made a claim for wages against CCI before the Illinois Department of Labor. Nuccio charged that he was an employee of CCI and that CCI illegally withheld commissions due him. The Illinois Department of Labor allowed Nuccio's claim. Nuccio then brought this action to enforce the Department of Labor's award. CCI filed an affirmative defense asserting Nuccio was not an employee of CCI but rather an independent contractor and raised certain questions concerning his trading activities on behalf of Graham. CCI also filed a counterclaim against Nuccio asserting a tortious interference with the contractual relations between CCI and Graham. Nuccio answered the counterclaim. The matter was submitted to arbitration at which Nuccio prevailed. The award was rejected by CCI.

## I

For the following reasons, we deny Nuccio's motion to disqualify CCI's attorney.

On December 30, 1992, Nuccio filed a motion to disqualify CCI's attorney, Bruce Davidson (Davidson). The sworn affidavit of Nuccio accompanied the motion to disqualify and stated as follows: On or about 1986 a co-worker suggested Nuccio contact Davidson for professional advice and representation in connection with a commission dispute he was having with CCI. Thereafter, Nuccio met with Mr. Davidson, who listened to his story and outlined for him the actions that he would take on Nuccio's behalf, including writing demand letters and representing Nuccio in court. After the meeting,

Nuccio decided not to hire Davidson. Subsequently, Nuccio hired Levinson, Murray & Jensen, P.C., to represent him. Nuccio stated that he was surprised to find that Davidson had undertaken to represent CCI, but at the time he didn't think it was improper; he "assumed that sometimes attorneys represent both sides of a dispute like divorce lawyers sometimes do." Nuccio concluded his affidavit by stating that a few weeks earlier during a telephone conversation with his attorney, the subject of Davidson came up. It was at that time Nuccio related to his attorney, for the first time, how he had come to meet with Davidson and how he had met with Davidson for a professional consultation when he was looking for an attorney to represent him with respect to his commission dispute.

Nuccio maintains that he disclosed confidences to Davidson during the initial interview, and notwithstanding the fact that he declined to hire Davidson, Davidson should be disqualified from representing an opposing party in the same matter.

■ Rule 1.9 of the Code of Professional Responsibility provides in pertinent part:

"Conflict of Interest: Former Client

(a) A lawyer who has formerly represented a client in a matter shall not thereafter:

(1) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client, unless the former client consents after disclosure; or

(2) use information relating to the representation to the disadvantage of the former client, unless:

(A) such use is permitted by Rule 1.6; or

(B) the information has become generally known." (134 Ill. 2d R. 1.9.)

An attorney/client relationship can be created at the initial interview between the prospective client and the attorney, and it is possible that confidential information passed during the interview sufficient to disqualify the attorney from representing the opposing party in related litigation. (*Herbes v. Graham* (1989), 180 Ill. App. 3d 692, 536 N.E.2d 164.) However, CCI maintains that any issue as to any alleged conflict of interest on the part of Davidson has been waived by Nuccio.

In *Tanner v. Board of Trustees of the University of Illinois* (1984), 121 Ill. App. 3d 139, 459 N.E.2d 324, the plaintiff made a motion to disqualify defendant's counsel on the basis that the addition of an attorney to defendant's counsel's firm, who had previously been employed by the plaintiff's counsel's law firm, created a conflict of

interest for defendant's counsel's law firm. The appellate court noted that the plaintiff's affidavit made no showing of diligence in complaining of the conflict of interest and found that under the circumstances plaintiff waived the issue by failing to raise the issue earlier. *Tanner*, 121 Ill. App. 3d at 147, 459 N.E.2d at 329.

In *Skokie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.* (1983), 116 Ill. App. 3d 1043, 452 N.E.2d 804, the appellate court affirmed the disqualification of plaintiffs' attorney, where the predecessor law firm to his current firm had previously been retained by the defendant. The court noted that a peripheral matter had been raised by the plaintiffs as to whether the trial court erred in denying disqualification on the grounds of *laches* and waiver. Although the court found that the plaintiffs' contention was not supported by the record, the court also stated that their decision should not be interpreted to mean that the question of disqualification may never be waived. The court noted the doctrine of waiver had recently been applied in affirming the trial court's denial of a motion to disqualify the defendant's attorney in *Roth v. Roth* (1980), 84 Ill. App. 3d 240, 405 N.E.2d 851, where the plaintiffs had been aware of the potential impropriety from the onset of the action, but failed to present a motion to disqualify defendant's counsel until two years after litigation commenced.

Davidson has represented CCI throughout the controversy between the parties, beginning in 1986. On February 29, 1986, Nuccio's attorney sent a letter to Davidson offering to settle the matter for $7,000. The letter indicates that a copy was also sent to Nuccio. Davidson's name appears as CCI's attorney on all the pleadings. At the time the motion to disqualify was filed, Davidson had already represented CCI through six years of controversy, including the labor department hearing in early 1988, the arbitration hearing in January of 1991, and during Nuccio's discovery deposition. In CCI's motion for resolution of the conflict question, Davidson indicated that he had no recollection of any meeting between himself and Nuccio and that he and Nuccio had three times been in directly confrontational postures during the litigation: (1) before the Illinois labor board, (2) in mandatory arbitration proceedings, and (3) in Nuccio's discovery deposition. In addition, the motion stated, "even at this late date, undersigned [Davidson] would personally prefer to withdraw, however, his client, Chicago Commodities, Inc., has serious objection."

In response to CCI's waiver argument, Nuccio cites to *King v. King* (1977), 52 Ill. App. 3d 749, 367 N.E.2d 1358, and argues that case arises from the same factual situation that CCI would urge to constitute a waiver situation. In *King*, Gene King visited attorney

Burt Greaves on October 27, 1973, to discuss his marital problems. Gene did not retain Greaves to represent him. On October 14, 1975, Nancy King filed a complaint for separate maintenance. Greaves was Nancy's attorney. On October 21, 1975, Gene filed a motion to exclude Greaves as attorney for Nancy because he had revealed confidences to Greaves. The trial court denied the motion to exclude Greaves and the matter continued in the trial court with Greaves representing Nancy. The appellate court found that Gene's statements indicated that an attorney/client relationship did arise to the extent that any communications between Gene and Greaves would be privileged. The court found that an attorney cannot recover from the party that he has wronged for legal services where he has represented adverse, conflicting, and antagonistic interests in the same litigation. The appellate court reversed the decree of the trial court to the extent that it provided for the award of attorney fees to Greaves. *King*, 52 Ill. App. 3d at 753, 367 N.E.2d at 1361.

We find *King* factually distinguishable from the present case. In *King*, the defendant filed a motion to disqualify the attorney seven days after a complaint was filed in the case, whereas in the present case, a controversy existed for over six years prior to the filing of a motion to disqualify. In addition, at the time *King* was appealed, the matter was concluded in the trial court and the only relief granted was that Gene was relieved of paying Nancy's attorney fees. (See *King v. King*, 52 Ill. App. 3d 749, 367 N.E.2d 1358.) We do not believe the holding in *King* prohibits a finding of waiver in the present case.

■ Davidson has stated that he had no recollection of his meeting with Nuccio, and although we have no reason to doubt this assertion, this fact does not relieve Davidson of following the Code of Professional Conduct and avoiding the appearance of impropriety. Had Nuccio brought a motion to disqualify Davidson as soon as practical upon learning that Davidson had undertaken to represent CCI, we would agree that disqualification was proper. However, under the facts of this case, we find that Nuccio has waived any issue with regard to any conflict of interest between himself and Davidson. Due to the fact that Nuccio waited so long to bring the issue of the potential conflict to the court's attention, we feel that CCI would be unfairly prejudiced by Nuccio's lack of diligence.

Accordingly, for the reasons set forth above, plaintiff's motion to disqualify defendant's attorney, Bruce Davidson, is denied.

## II

CCI argues that the trial court erred in dismissing its third amended counterclaim and maintains that the allegations contained

therein are sufficient to state a cause of action. In reviewing CCI's counterclaim, we accept as true all well-pleaded facts and reasonable inferences therefrom, but we need not accept conclusions or inferences which are not supported by specific factual allegations. (See *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 426-27, 430 N.E.2d 976.) Although pleadings should be liberally construed, the complaint must allege facts necessary to state a cause of action. (*Premier Electrical Construction Co. v. City of Chicago* (1987), 159 Ill. App. 3d 98, 512 N.E.2d 44.) In order to state a cause of action, the counterclaim must be both legally sufficient and factually sufficient, setting forth a legally recognized claim as its basis for recovery, as well as pleading facts which bring the claim within the legally recognized cause of action alleged. *J. Eck & Sons, Inc. v. Reuben H. Donnelley Corp.* (1991), 213 Ill. App. 3d 510, 572 N.E.2d 1090; *Lester v. Chicago Park District* (1987), 159 Ill. App. 3d 1054, 1057, 513 N.E.2d 72.

■ CCI has set forth argument pertaining to its first and second amended counterclaims in support of the fact that it attempted to "fine-tune" its previous pleadings. However, any analysis of CCI's earlier pleadings is inappropriate. When CCI filed its third amended counterclaim, it waived any objection to the trial court's ruling on the former counterclaims. (*Foxcroft Townhome Owners Association v. Hoffman Rosner Corp.* (1983), 96 Ill. 2d 150, 449 N.E.2d 125.) "Where an amendment is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be a part of the record for most purposes, being in effect abandoned and withdrawn." *Bowman v. County of Lake* (1963), 29 Ill. 2d 268, 272, 193 N.E.2d 833.

■ CCI has urged the application of section 2—612(b) of the Illinois Code of Civil Procedure to excuse its pleading deficiencies. (See Ill. Rev. Stat. 1991, ch. 110, par. 2—612(b).) However, as Nuccio correctly points out, basic legal deficiencies in a pleading cannot be aided by a general rule of liberal construction. *Premier Electrical Construction Co. v. City of Chicago* (1987), 159 Ill. App. 3d 98, 102, 512 N.E.2d 44.

■ A complaint based upon breach of contract must allege the existence of the contract, including allegations indicating an offer, acceptance and consideration, the plaintiff's performance of all contractual conditions required of him, the fact of the defendant's alleged breach, and the existence of damages as a consequence. (*Wait v. First Midwest Bank/Danville* (1986), 142 Ill. App. 3d 703, 491 N.E.2d 795; see also *National Underground Construction Co. v. E.A. Cox Co.* (1991), 216 Ill. App. 3d 130, 136, 576 N.E.2d 283, 287.) "A general allegation that a contract exists without supporting facts is a legal

conclusion which may not be admitted as true by a motion to strike or dismiss [citations], as neither conclusions of law nor conclusions of fact unsupported by allegations of specific facts upon which the conclusions are based may be considered in ruling on the motion." *Wait v. First Midwest Bank/Danville* (1986), 142 Ill. App. 3d 703, 706, 491 N.E.2d 795, 799-800.

■ The third amended counterclaim alleges Nuccio breached an oral contract with CCI which relied upon the customs and practices of the industry for provision of most terms. CCI argues that, in the present case, issues such as offer and acceptance are simply immaterial and that the allegation that there was a contract between the parties adequately implies that there was an offer and acceptance. However, "[a] general allegation that a contract exists is, in the absence of a statement of supporting facts, a mere legal conclusion, which is not admitted by a motion to dismiss or a motion to strike." (*Pollack v. Marathon Oil Co.* (1976), 34 Ill. App. 3d 861, 864, 341 N.E.2d 101, 104.) If the acceptance of an offer is oral, then the specific facts supporting this theory of acceptance must be alleged. (*Wait,* 142 Ill. App. 3d at 707, 491 N.E.2d at 800, citing *Pollack v. Marathon Oil Co.* (1976), 34 Ill. App. 3d 861, 341 N.E.2d 101.) Since the third amended counterclaim is devoid of the necessary factual allegations, the trial court acted properly in granting Nuccio's motion to dismiss.

The description of Nuccio's breach is contained in paragraph 18 of the third amended counterclaim, which alleges that Nuccio violated

> "applicable regulations (including, but not limited to Commodity Exchange Act secs. 4b & 4c(b); CFTC Regulations secs. 1.20, 1.22, & 1.57; National Futures Association Rules 2—2, 2—4, 2—10, 2—29, & 2—30: Chicago Mercantile Exchange Rules 432b, c & q."

Nuccio argues that the above allegations are rendered meaningless and incapable of response by the use of the term "including, but not limited to" and claims that makes the allegation no more specific than if no statutes or rules had been cited at all. Although we do not believe that the term "including, but not limited to" completely undermines the fact that CCI has cited certain regulations, the above-cited allegations do not describe, in any manner, the substance of the rules that CCI contends were violated, nor how Nuccio allegedly violated those rules. In addition, there is no indication of what the additional rules or regulations might be that CCI is referring to when using the term "including, but not limited to." Paragraph 18 continues on to allege that Nuccio violated:

> "house rules of Chicago Commodities, Inc.—which include those of the clearing house Rosenthal & Co.—are not formally published

but are established from time to time orally, in writing, and by custom practice and usage), and the terms of his contract incorporating these regulations."

This portion of the allegation is extremely vague and basically meaningless. CCI alleges that Nuccio violated unpublished, oral regulations and then fails to give any indication whatsoever of what these regulations might be. The third amended counterclaim not only fails to contain facts alleging offer and acceptance, it fails to sufficiently allege CCI's performance of all contractual conditions required of it, or Nuccio's breach of the contract.

For all the reasons set forth above, we affirm the decision of the trial court dismissing the third amended counterclaim.

Judgment affirmed.

GORDON, P.J., and McNULTY, J., concur.