(No. 20423.—

ELLA WINKELMANN, Appellee, *vs.* EMELIA LUCHT
SATORIUS WINKELMANN *et al.* Appellants.

*Opinion filed October 23, 1931.*

V. O. WHIPP, and EDWARD H. GOLDEN, for appellants.

GILLESPIE, BURKE & GILLESPIE, HUGH J. DOBBS, and FRANK E. BLANE, for appellee.

Mr. COMMISSIONER PARTLOW reported this opinion:

Appellee, Ella Winkelmann, filed her bill in the circuit court of Menard county against appellants, who were the heirs of August Winkelmann, deceased, for the specific performance of a contract alleged to have been made by Winkelmann and wife to adopt appellee. The cause was referred

to a master to take the evidence. Upon a hearing before the chancellor a decree was entered as prayed, and an appeal has been prosecuted to this court.

Appellee has made a motion to dismiss the appeal or to transfer the cause to the Appellate Court on the ground that a freehold is not involved, which motion has been taken with the case. A freehold is involved in all cases where the necessary result of the judgment or decree is that one party gains and the other loses a freehold estate. In order to give this court direct jurisdiction of an appeal upon the ground that a freehold is involved, the freehold must be directly, and not collaterally or incidentally, involved. (*Lederer* v. *Rosenston,* 329 Ill. 89.) A freehold is involved where the right to a freehold is so put in issue by the pleadings that the decision of the case necessarily involves a decision of such issue. (*Lundquist* v. *Iverson,* 333 Ill. 523; *Rae* v. *Klotter,* 329 id. 59; *Dunlap* v. *Myers,* 325 id. 398.) In this case the title to the property was put in issue by the bill, the answer and the decree to the extent that a decision of the case necessarily resulted in the loss of a freehold either by appellants or by appellee. The bill alleged that Winkelmann died intestate in November, 1926, seized of certain real and personal estate; that appellants claim to be the sole heirs of the deceased and the only persons entitled to share in the distribution of his estate; that the deceased agreed to legally adopt appellee and give her a home and the legal rights of a natural child. The prayer was that appellee be declared to be the legally adopted child of the deceased and that she "be entitled to his real estate and to share in the distribution of his personal property." The answer denied the making of the contract and the right of appellee to inherit the real or personal property, and it admitted that appellants are claiming to be the only heirs and the only persons entitled to inherit the real and personal property. The decree finds that appellee is entitled to the specific performance of the contract for adoption and that

she is entitled to inherit her share of the real and personal estate. The title to the property was fixed before the bill was filed. The title was in issue in this case, the appeal was properly prosecuted to this court, and the motion to dismiss will be overruled.

It is insisted by appellants that the evidence does not establish the contract; that the contract is too indefinite to be specifically performed; that it is unfair, unjust and oppressive to the rights of third persons; that the evidence does not show such substantial performance as will work a fraud on appellee if it is not enforced, and that it is void under the Statute of Frauds. All of these propositions are denied by appellee.

Oral agreements to adopt, not followed by legal adoption, have been held to be valid and enforceable, provided they are made by parties competent to contract, are based upon a sufficient consideration, are not objectionable as being within the operation of the Statute of Frauds, and are not in contravention of some principle of public policy. (*Wallace* v. *Rappleye,* 103 Ill. 229; *Woods* v. *Evans,* 113 id. 186; *Mould* v. *Rohm,* 274 id. 547; 1 Corpus Juris, 1376, 1377, 1379.) Where a child has fully performed its obligations under a contract to adopt and allowing the contract to remain unenforced would be inequitable, the child is entitled to a decree for specific performance, provided the contract be proven according to the standard of proof required. (*Hutton* v. *Busaytis,* 326 Ill. 453.) The Statute of Frauds does not apply to this adoption contract. (*Linn* v. *Hockaday,* 162 Mo. 111, 85 Am. St. Rep. 480; *Lindsley* v. *Patterson,* 177 S. W. 826.) Such contracts are not to be confused with contracts to will or convey property. (*Tuttle* v. *Winchel,* 104 Neb. 750, 11 A. L. R. 814.) Courts of equity accept with caution evidence offered in support of a contract to make disposition of the property of a deceased person different from that provided by law and will weigh the evidence scrupulously. (*Yager* v. *Lyon,* 337 Ill. 271.)

The contract must be reasonably certain as to the terms and the subject matter. (*Weber* v. *Adler,* 311 Ill. 547.) The evidence must be clear, explicit and convincing. (*Keller* v. *Joseph,* 329 Ill. 148.) It is only where the Statute of Limitations bars a recovery at law, or where improvements made or services performed cannot be adequately compensated at law, or where a failure to carry out the agreement will amount to a fraud on the promisee, that specific performance will be decreed. (*Flannery* v. *Woolverton,* 329 Ill. 424; *Stephens* v. *Collison,* 313 id. 365.) It is only on the principle that it is unjust and inequitable to permit a contract to remain unexecuted that a court of equity will grant relief by specific performance. (*McDonald* v. *Bartlett,* 324 Ill. 549.) Where the promisee shows no substantial change for the worse in his position in consequence of the agreement, relief will be denied. (*Snyder* v. *French,* 272 Ill. 43.) Specific performance is not a matter of right but rests in the sound discretion of the court, to be determined from all of the facts and circumstances in evidence. *Edwards* v. *Brown,* 308 Ill. 350.

The evidence in this case shows that August Winkelmann died intestate November 22, 1926, in Menard county, Illinois, leaving surviving his widow and two daughters, Edna and Mary. He left an estate consisting of real and personal property of the value of about $40,000. He had been married twice, and the two daughters above named were children of the second marriage. His second wife had been married twice, and she had three children by a prior marriage. Winkelmann had no children by his first wife. Appellee was born in Menard county on January 2, 1900. She was the daughter of Reinhard and Minnie Albrecht. Her mother died eight days after her birth, leaving appellee, a daughter Margaret, who was seven years old, and a son, Fred, who was four years old. Mrs. Albrecht had a brother, Fred Backhaus, who made his home with Albrecht. Winkelmann was a brother-in-law of Albrecht,

their wives being sisters. Evidence was offered by appellee to show that shortly after the death of Mrs. Albrecht a conversation took place between Winkelmann and Albrecht in which the question of the adoption of appellee by Winkelmann and his then wife was discussed. Backhaus and Anna Landau, who were a brother and sister of Mrs. Albrecht, and Albrecht, testified that they were present when this conversation took place. Backhaus testified that Winkelmann and his wife said they would like to adopt appellee and make her their own child; that Albrecht said he wanted to keep his three children together, if he could; that Winkelmann said he would adopt appellee and keep the other children if Backhaus would work for Winkelmann and help take care of the children; that Winkelmann said he would like to have the three children and that he would like to adopt appellee as his own. Anna Landau testified that the conversation at that time was with reference to what should be done with the children; that Winkelmann had no children and said he would take appellee and raise her as his own child and adopt her, and that Albrecht said he would rather keep the three children together. She testified that she had given the exact conversation that took place between Winkelmann and wife and Albrecht. Albrecht testified that he and Winkelmann talked about an adoption and giving the children a home; that Winkelmann said he and his wife would take the baby and adopt her as their legal child, and that they would take Fred and Margaret if Backhaus would come with them and help take care of the children.

The evidence shows that the three children, including appellee, were taken to the home of Winkelmann, where they remained until appellee became sixteen years of age and until Fred and Margaret reached their majority. On February 25, 1900, appellee was baptized, and a baptismal certificate was offered in evidence signed by the pastor of the Evangelical church. This certificate contained the following statement: "This child was through this baptism

by August Winkelmann and his wife, Margaret, born Backhaus, adopted," and was signed, "P. Weil, Evangelical Pastor." It is insisted by appellants that this certificate was not properly admitted in evidence, for the reason that it was admissible merely to show the date and place of baptism but not to prove other facts, including the date of birth or that she was born as the lawful child of the parents, when these facts are in dispute, citing *Dailey* v. *Brotherhood of Railroad Trainmen,* 311 Ill. 184, and *People* v. *Cassidy,* 283 id. 398. There can be no dispute as to the legal effect of this certificate, but the evidence shows that it was in the possession of Winkelmann for many years prior to his death and he knew it contained a statement with reference to the adoption of appellee, made within two months of the date she came into his possession. Backhaus testified that at the time of this baptism Winkelmann said he had adopted appellee and that she was his legal heir. Anna Landau testified that at the time of the baptism Winkelmann said this paper (meaning the certificate) was the adoption paper and that he had adopted appellee as his own. The certificate was properly admitted in evidence.

The evidence shows that shortly after the death of his wife Albrecht sold all of his property in Menard county and moved to Iowa, where he rented a farm. After he had lived in Iowa for several months he returned to Menard county and asked Winkelmann to let him take the three children with him to his home in Iowa. Albrecht testified that at that time Winkelmann said that he and his wife had adopted appellee and made her their legal heir and that Albrecht could not take her to Iowa with him, and that in reply to that statement Albrecht said the adoption of appellee was satisfactory to him. About two years later Albrecht moved to Nebraska, where he re-married and where he resided for almost thirty years. He testified that after he had lived in Nebraska for about a year he wrote to Winkelmann with reference to the possession of his children, and

he received a letter from Winkelmann in which he informed witness that he could not have appellee because Winkelmann had adopted her. Albrecht never saw her after 1902 until about the time of the trial of this case. He corresponded with the other two children who were in the Winkelmann home but there is no evidence that he either saw or corresponded with appellee. Appellee for the sixteen years that she resided in the Winkelmann home, and until her marriage on October 29, 1928, was known by the name of Winkelmann. Her brother and sister went by the name of Albrecht. They called Winkelmann "uncle" and appellee called him "papa." The brother and sister worked for Winkelmann after they were of age and he paid them wages and charged his expenditures against their wages. He never paid appellee wages or charged her with expenses. There was evidence that he repeatedly told various parties that he had adopted appellee, and he told her brother and sister that they occupied a different relation in his home from appellee. In 1906 Mrs. Winkelmann died. In 1912 Winkelmann re-married. After this second marriage appellee remained in the Winkelmann home for about four years. Trouble arose between appellee and Mrs. Winkelmann and the latter left home, stating that she would not return as long as appellee was there. When this trouble arose Winkelmann secured appellee a home with her brother-in-law, the husband of Margaret. Winkelmann paid the expenses of appellee for her maintenance at the home of her brother-in-law and at other places. He visited her at various places after she left his home. He referred to her as his child, and on one occasion she received a letter from him which was signed, "Your Father." Winkelmann paid for her clothing and gave her money. She became a trained nurse about three years after she left the Winkelmann home. During the time she was studying to become a trained nurse she had a surgical operation and her expenses were paid by Winkelmann. Just prior to the death of Winkelmann he

had a spell of sickness and appellee attended him as a nurse during that time. Evidence was offered by appellants from witnesses who were well and intimately acquainted with Winkelmann, tending to show that he never told any of them that he had adopted appellee. They also testified that they never saw any difference in the manner in which Winkelmann treated appellee and her brother and sister.

Appellants have cited numerous cases which they contend support their claim that the evidence does not support the decree. In no two of these cases are the facts identical with the facts in this case. Each case depends upon its particular facts. When the evidence in this case is considered as a whole it is sufficient to sustain the decree under the prior decisions of this court and the decisions in other jurisdictions cited by appellee. The evidence shows that an agreement to adopt was made. Its terms are reasonable, clear and specific. Winkelmann evidently thought he had adopted appellee and that he had complied with the law in that respect. He treated her as his daughter, she bore his name, he took care of her the same as he would his own daughter, and he evidently intended that she should share in his estate. He died without a will. Appellee and her father fully performed the terms of the contract. Their conduct in this respect was referable solely to the contract. The contract was not repugnant to public policy. The surrender to Winkelmann of appellee by her father was a valuable consideration for the contract and the performance thereof, which cannot be determined in money value.

The original bill did not waive an answer under oath and the answer of the widow of Winkelmann was made under oath. Her answer denied that any contract or agreement ever existed between Albrecht and Winkelmann for the adoption of appellee and denied the other allegations of the bill. Appellants insist that appellee, by not waiving the answer under oath, in effect made the widow her own witness and made the answer evidence necessary to be over-

come by the testimony of two witnesses or by one witness and strong corroborating circumstances, and that when proper legal effect is given to the answer under oath, appellee has failed to establish the alleged contract with such a degree of certainty and clearness as to leave no reasonable doubt as to the contract and its terms. In *Fryrear* v. *Lawrence,* 5 Gilm. 325, it was held that while a defendant's answer, which is required to be sworn to, is made evidence in the case by the complainant, it is only entitled to weight when it is entitled to belief, and that if the defendant chooses to swear to that which the court sees he cannot, or which he admits he does not, know, it is not entitled to weight as evidence. In *Fish* v. *Fish,* 235 Ill. 396, it was held that a sworn answer is subject to impeachment either by its own impossibility or the inconsistent conduct or declaration of the person swearing to it. The record in this case shows that although the answer denies the agreement to adopt and other facts and circumstances upon which appellee relies, appellants are not in a position to make these positive denials, as they were ignorant of all that transpired between Winkelmann and appellee prior to 1912. The evidence also shows that more than two witnesses testified to the adoption agreement. Such testimony completely discharged the requirement that the verified answer must be overcome by the testimony of two or more witnesses.

We find no reversible error, and the decree is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*