In re ESTATE OF JOHN J. STAEHLI, Deceased.—(DONNA HARTNETT, Plaintiff-Appellant, *v.* VIRGINIA LA RAVIERE, Adm'r of the Estate of John J. Staehli, Defendant-Appellee.)

First District (2nd Division)   No. 79-1042

Opinion filed June 17, 1980.—Rehearing denied July 29, 1980.

Gerard C. Heldrich, Jr., of Chicago (Michael Kreloff and Samuels, Schwerin & Kreloff, of counsel), for appellant.

John J. Hoellen and Edward J. Halper, both of Hoellen, Lukes, Halper and Abramson, of Chicago, for appellee.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

Donna Hartnett (hereinafter plaintiff) appeals from the trial court's order granting the motion of Virginia LaRaviere (hereinafter defendant) to dismiss with prejudice counts I and II of plaintiff's amended supplementary proceeding (complaint), by which she sought to be declared an heir of John J. Staehli (hereinafter decedent) and to contest the validity of his will. Count I sought to have plaintiff declared a lawful heir of decedent, setting forth factual allegations attempting to identify elements of estoppel supportive of an equitable adoption of her mother by decedent. Count II alleged that the probated will of August 7, 1977, was procured through the use of undue influence by defendant. For the reasons which follow, we affirm.

The factual background of plaintiff's claims as revealed by the complaint assert that decedent met Rose Tortorello, his future wife, in 1909 while both worked for the Burlington Railroad in Chicago. Rose had a daughter, Mary, born December 15, 1909. She had been married to Louis Tortorello on March 6, 1909, and was divorced from him on October 7, 1913. At the time of divorce, the decree legally changed the daughter's name to Mary Smith, the surname of her mother prior to marriage. Decedent married Rose Smith on March 17, 1916, when Mary was six years old. By the time Mary Smith was eight years old, she was commonly known as Marion Ann Staehli. She lived with and was raised by decedent and Rose Staehli, in their home at 1935 Bradley Place in Chicago. Marion married Herbert Blumer, and in 1927, at the age of 17, Marion gave birth to a daughter, plaintiff, who was placed into the care and custody of decedent and Rose Staehli. They raised her from infancy to adulthood in their Bradley Place home.

Among other alleged facts concerning decedent's public representations as to his relationship to Marion Ann Staehli, plaintiff's mother, were that: Mary Smith was known as Marion Ann Staehli, and was raised, until emancipated, by John J. Staehli and Rose Staehli; decedent held out and represented to the public and to relatives, namely, Fred and Louise Liedtke, that Marion Ann Staehli was his adopted daughter; she attended Alexander Graham Bell Elementary School in Chicago and Lakeview High School, as Marion Ann Staehli and all records of said schools concerning her show that John J. Staehli is her father and Rose Staehli is her mother; a 1920 United States Census showed that Marion Ann Staehli was enumerated with John J. Staehli and Rose Staehli; on November 20, 1930, Marion Ann Staehli was baptized at Saint Alphonsus Church, Chicago, and certified as a child of John J. Staehli and Rose Smith; also on November 20, 1930, Marion Ann Staehli was married to John Howe (apparently a second marriage) at Saint Alphonsus Church, Chicago, which church certified her as a child of John

Staehli and Rose Smith; Marion Ann Staehli was included in a six-plot family cemetery lot; during the year 1953 Marion Ann Staehli was terminally ill and died December 6, 1953, John J. Staehli paying for her nursing, medical, funeral and burial expenses; and a death certificate issued by the State of Illinois on December 8, 1953, certifies that John J. Staehli and Rose Smith were the parents of Marion Ann Staehli.

As to decedent's relationship with plaintiff, count I alleges that decedent "acknowledge[d] in writing" to her that plaintiff was his granddaughter. The alleged acknowledgement appears to be a note which simply states: "Dear Donna:—Granddaughter 'The generous heart should scorn a pleasure which gives others pain.' Daddy John. May 27, 1942." Plaintiff further alleges that "upon her emancipation" and until decedent's death, she "did, at diverse times and places, reside with and provide care and comfort" to decedent; and one Michael Hartnett, plaintiff's child, was held out, recognized and treated by decedent as his great grandchild at various times and places.

On February 7, 1979, defendant filed a "Motion for Involuntary Dismissal of, or in the Alternative, to Strike and Dismiss" the amended supplementary proceeding under sections 45 and 48 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, pars. 45, 48). She alleged as to plaintiff's claim in count I, *inter alia*, that it: failed to state a sufficient factual basis for the relief requested, that plaintiff be declared decedent's sole heir at law; was contrary to the statutory scheme of heirship set forth in the Probate Act of 1975 (Ill. Rev. Stat. 1977, ch. 110½, par. 1—1 *et seq.*); and was barred by the doctrine of *res judicata* because plaintiff's mother's parentage was established by her grandmother's 1913 decree of divorce from Louis Tortorello and by public policy.

On April 10, 1979, the trial court ordered that counts I and II be dismissed "with prejudice," found no just reason to delay enforcement or appeal, and struck count III with leave to amend, the substance of which is not before us in this appeal.

Plaintiff concedes that her mother was never adopted by decedent in a "valid legal proceeding," but argues that the trial court erred in dismissing count I of her amended complaint based upon two equitable doctrines claimed to apply to the facts alleged, namely, "contract to adopt" and "equitable adoption."

● 1 Relying upon the contract to adopt theory as developed in *Monahan v. Monahan* (1958), 14 Ill. 2d 449, 153 N.E.2d 1, *Weiss v. Beck* (1953), 1 Ill. 2d 420, 115 N.E.2d 768, *Winkelmann v. Winkelmann* (1931), 345 Ill. 566, 178 N.E. 118, and *In re Estate of Drisch* (1969), 112 Ill. App. 2d 242, 250 N.E.2d 513, plaintiff avers that the aforegoing factual allegations, if proved, would establish a contract to adopt and plaintiff's right to be declared an heir of decedent. Absent from the pleadings, however, is any

4

allegation that a contract to adopt was ever formed or existed. Indeed, the words "contract," "agreement," or "understanding" cannot be found anywhere in the allegations of count I. The articulation merely of acts and conduct by the parties without mention or claim of a contract, agreement or understanding between any of the parties, at any time, involving any benefit or detriment in support thereof, simply fails in the most fundamental respects to establish an action in contract. (See, *e.g.*, *Pollack v. Marathon Oil Co.* (1976), 34 Ill. App. 3d 861, 864-66, 341 N.E.2d 101.) Plaintiff's reliance upon *Winkelmann* and *Monahan* is therefore misplaced; in both cases a contract to adopt was pleaded, the *Winkelmann* court holding that under such pleadings (345 Ill. 566, 569-70):

> "Where a child has fully performed its obligations *under a contract to adopt* and allowing the contract to remain unenforced would be inequitable, the child is entitled to a decree for specific performance, *provided the contract be proven according to the standard of proof required. (Hutton v. Busaytis, 326 Ill. 453.)* \* \* \* Where the promisee shows no substantial change for the worse in his position in consequence of the agreement, relief will be denied. (*Snyder v. French*, 272 Ill. 43.)" (Emphasis supplied.)

Neither consideration nor a substantial change in position as a result of the purported oral contract finds a basis in the factual allegations of count I in the present case. The only inference of consideration is plaintiff's representation that she provided care, comfort and society to decedent for a number of years; but this circumstance, even if established by evidence, is as fully or more readily explainable as a natural outgrowth of being raised in the same household as decedent occupied and partially under his care.

A contract to adopt was found to have been shown in *Monahan v. Monahan*, where the plaintiff was abandoned by his father and given by his mother to an intestate decedent and his wife, the Monahans, who were paid $8 per week by the mother in board money for several years thereafter and were given specific permission to adopt plaintiff. The Monahans made several unsuccessful attempts to legally adopt plaintiff, but were told by an attorney they could not do so. No will was executed by either Monahan expressing an intent contrary to plaintiff's adoption and heirship. Under these circumstances "[t]he oral contract is clearly established \* \* \*" (14 Ill. 2d 449, 454). In the present case, however, decedent received no money or other consideration for raising plaintiff or her mother, who was alleged to have lived in decedent's residence with her natural mother and to have been raised also by her. No agreement to adopt plaintiff or her mother is alleged. No attempt to legally adopt either

of them is asserted. Finally, decedent's will not only fails to provide for plaintiff, it explicitly denies adoption. On its facts, therefore, *Monahan* offers no support for a like result here.

In *Weiss v. Beck*, which involved a similar claim by a plaintiff raised by a decedent who allegedly contracted to adopt him, the court found fatal the absence of any "\* \* \* positive indication that any agreement to adopt plaintiff was made by [anyone]" (1 Ill. 2d 420, 427), reviewing evidence even stronger than the supporting facts alleged in the case at bar. The court in *Weiss* recounted several related statements to the effect that plaintiff would get everything the putative adoptive parents had when they died. One witness testified that they said they had adopted Carl, and, another testified that they asserted they would adopt the plaintiff there. The court held that although this and other evidence was consistent with the existence of an oral agreement to adopt, it by no means clearly and conclusively proved the existence of such a contract, or the terms thereof. "All of the facts could as readily be harmonized with a theory that plaintiff was merely taken to raise in a good home. *Hutton v. Busaytis*, 326 Ill. 453." 1 Ill. 2d 420, 429.

Plaintiff attaches "great importance" to the fact that she has alleged decedent "held out and represented to the public and to relatives" that her mother was his adopted daughter and named two persons, Louise and Fred Liedtke, who were thus advised. These allegations, however, correspond to evidence adduced in *Weiss v. Beck*, that one of the decedents of whom the plaintiff claimed a contract to adopt, had told several relatives and friends that the plaintiff was his adopted son (1 Ill. 2d 420, 425). This circumstance was found insufficient in the face of other vital evidence lacking.

2 Regarded as indispensable to prevailing in a contract to adopt action in the few cases in Illinois involving such a claim are sufficient consideration for the promise and definite agreement to do so, the terms of which are clear and certain. (*E.g., In re Estate of Drisch* (1969), 112 Ill. App. 2d 242, 249.) Plaintiff in the case at bar stresses that she should at least have the opportunity to meet this burden through an evidentiary hearing. Pleadings must conform to proof, however (*Broberg v. Mann* (1965), 66 Ill. App. 2d 134, 213 N.E.2d 89), and in the absence of any discernible attempt to plead facts establishing these necessary elements of her claim, the trial court did not err in dismissing count I of the supplementary proceeding.

Although plaintiff's second theory, equitable adoption, has not been recognized in Illinois, plaintiff relies upon decisions of other jurisdictions in arguing that she has alleged sufficient facts to warrant its recognition here. The cases cited set forth varying concepts and standards. In *Adler v.*

*Moran* (Tex. Civ. App. 1977), 549 S.W.2d 760, for example, the Texas Court of Civil Appeals equated the theories of equitable adoption and contract to adopt, and held that in order to establish either, the plaintiffs had to prove a definite adoption agreement, reliance by themselves upon the putative adopted status, and performance of their obligations thereunder. In *Mize v. Sims* (Mo. App. 1974), 516 S.W.2d 561, it was held that it is not indispensable that an agreement to adopt alleged in that case be shown by direct evidence, but may be inferred from the acts, conduct, and administrations of the adopting parent if they are such as to furnish clear and satisfactory proof that the agreement must have existed. In *Mize*, both natural parents of the plaintiff surrendered him to decedent, who somehow believed the plaintiff to be his natural son, accepted full and exclusive responsibility to raise and educate him, and sought legal means to adopt which were never completed. "Equitable estoppel" was invoked in *In re Marriage of Valle* (1975), 53 Cal. App. 3d 837, 841, 126 Cal. Rptr. 38, 41, not as to heirship but in the context of an action for, *inter alia*, child support, the court citing as "[t]he governing authority" the earlier case of *Clevenger v. Clevenger* (1961), 189 Cal. App. 2d 658, 11 Cal. Rptr. 707. In *Clevenger* it was held that a child might look to a putative father for support upon an estoppel theory under circumstances entirely inapplicable here. Moreover, the estoppel theory relied upon in *Valle* speaks directly to the parent-child relationship and is inapplicable to plaintiff, whose relationship with her natural father was apparently unaffected by her relationship with decedent. As earlier mentioned, the pleading under consideration here does not allege any contract to adopt by which to measure "acts, conduct or administrations" of an adopting parent.

● 3 The thrust of plaintiff's argument in count II relates to the legal elements of undue influence as set forth in *Herbolsheimer v. Herbolsheimer* (1975), 60 Ill. 2d 574, 328 N.E.2d 529, *Peters v. Catt* (1958), 15 Ill. 2d 255, 154 N.E.2d 280, and *Swenson v. Wintercorn* (1968), 92 Ill. App. 2d 88, 234 N.E.2d 91. Defendant does not challenge these familiar principles; rather, her argument relies upon plaintiff's lack of standing to contest the will. Being neither a legal heir nor one provided for in a prior will, she is not an "interested person" under section 8—1 of the Probate Act (Ill. Rev. Stat. 1977, ch. 110½, par. 8—1) and therefore lacks standing to intervene. (See, *e.g.*, *In re Estate of Lipchik* (1975), 27 Ill. App. 3d 331, 326 N.E.2d 464; *In re Estate of King* (1968), 91 Ill. App. 2d 342, 235 N.E.2d 276.) Plaintiff tacitly concedes that absent "interested person" status, she lacks the requisite standing to contest the will. In light of our decision as to the correctness of the trial court's determination with respect to count I, plaintiff's count II was also properly dismissed.

Having found no error in the dismissal of counts I and II of plaintiff's amended complaint, we are obliged to affirm.

Affirmed.

STAMOS and DOWNING, JJ., concur.