# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *DeHart v. DeHart*, 2012 IL App (3d) 090773

---

| | |
|---|---|
| Appellate Court Caption | JAMES THOMAS DEHART, Plaintiff-Appellant, v. BLANCA DEHART, Executor of the Estate of Donald M. DeHart, and BLANCA DEHART, Individually, Defendants-Appellees. |
| District & No. | Third District<br>Docket No. 3-09-0773 |
| Filed | March 6, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where decedent, defendant's husband, allegedly held plaintiff out as his son during his lifetime, yet shortly after his marriage decedent executed a new will stating that he had no children and plaintiff filed the underlying complaint challenging the will, the trial court's dismissal of the complaint was reversed on the grounds that plaintiff stated viable claims for lack of testamentary capacity, undue influence on the part of defendant, the existence of a contract to adopt, and equitable adoption by estoppel as an alternative to a contract to adopt, and pending the outcome of the will contest on remand, the dismissal of plaintiff's tort claims for fraudulent inducement to disinherit and tortious interference with plaintiff's economic expectancy to inherit was premature; furthermore, the denial of plaintiff's motion to compel the deposition of decedent's attorney was reversed and the matter was remanded to allow plaintiff to prove that the attorney-client privilege did not apply to his case. |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 07-P-697; the Hon. J. Jeffrey Allen and the Hon. Paula Gomora, Judges, presiding. |
| Judgment | Reversed and remanded. |

| Counsel on Appeal | Thomas M. Paris (argued), of Chicago, for appellant. |
|---|---|
| | Adrian Mendoza, Joseph P. Wleklinski, and Edward R. Sherman (argued), all of Lillig & Thorsness, Ltd., of Oak Brook, for appellees. |
| Panel | JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion. |
| | Justice McDade specially concurred, with opinion. |
| | Presiding Justice Schmidt concurred in part and dissented in part, with opinion. |

**OPINION**

¶ 1    Plaintiff, James Thomas DeHart (James), filed a second amended complaint challenging the will of the decedent, Donald M. DeHart. In September 2009, the circuit court of Will County granted the motion to dismiss with prejudice of defendant, Blanca DeHart (Blanca). This appeal from the court's September 2009 order granting Blanca's motion to dismiss James's complaint with prejudice, and the December 2008 order dismissing James's motion to compel the deposition of attorney William J. Peters, followed. For the following reasons, we reverse the orders of the circuit court and remand the matter for further proceedings.

¶ 2                              BACKGROUND

¶ 3    James filed a complaint against Blanca DeHart, both as executor of the estate of Donald M. DeHart, deceased, and individually, challenging Donald's will. The circuit court of Will County admitted the will to probate in April 2007 and appointed Blanca independent executor. Although the will did not recite that Donald was of sound mind, it was witnessed by two persons who attested that, to the best of their knowledge, he was "of sound mind and under no constraint or undue influence" at the time he executed the will. In September 2007, James filed his initial complaint to contest the will in separate proceedings. The court later consolidated the two cases. Blanca filed a motion to dismiss James's complaint for lack of standing. The court denied that motion.

¶ 4    Later, James filed a motion to compel the deposition of attorney William J. Peters, who allegedly prepared the challenged will, and a subpoena for records. Blanca objected to the motion on the grounds of attorney-client privilege. In December 2008, the court denied James's motion to compel without prejudice. In March 2009, the court granted Blanca's motion to dismiss James's initial complaint without prejudice on the ground it alleged insufficient facts to state a cause of action.

¶ 5    In April 2009, James filed an amended complaint, and in July 2009, he filed a second amended complaint praying the court: (1) declare the purported will was not Donald's will;

-2-

(2) declare that the purported will was null and void; (3) revoke letters of office issued to Blanca; and (4) distribute the estate pursuant to Donald's prior will or pursuant to law or equity.

¶ 6    The second amended complaint alleges that, during Donald's lifetime, he held James out to both individuals and institutions as his biological son. In May 2003, Donald made arrangements for his own funeral and listed James as his son. Donald listed James's children and grandchildren as his own grandchildren and great-grandchildren. In addition to telling members of the community over the years that James was his son, Donald provided James with a birth certificate naming himself as James's natural father.

¶ 7    Throughout his lifetime, Donald and James used the purported birth certificate for various reasons, including necessary verifications of birth for educational and medical purposes. However, in 2000, James attempted to use the birth certificate to obtain a passport, and the United States would not accept the purported record of James's birth, instead requiring him to produce a certified (raised stamp) copy of his birth certificate. James secured the certified copy and learned that his biological father's name was James Thomas Staley, Sr. The certified copy of James's true birth certificate lists his name as James Thomas Staley, Jr., and his birth date as May 23, 1944. In the complaint, James speculates that the original of the genuine birth certificate is within Blanca's control at Donald's residence.

¶ 8    James confronted Donald with the information contained on the certified copy of the true birth certificate. James's complaint alleges that Donald told him that his mother married Staley, James's biological father, after she became pregnant. Donald also allegedly told James that he adopted James in 1946 when James was two years old but that he and James's mother agreed to keep the adoption secret. Donald allegedly told James that he hired an attorney so that "it was all legal." There is no legal documentation of an adoption in the record. James's mother died in April 2001.

¶ 9    Even after the disclosure of the failure of a legal adoption, Donald continued to represent and describe James as his son. In 2005, Donald, James, and James's wife and children took a family vacation–with Donald assuming the bulk of the costs and expenses. The complaint also alleges the existence of a will that Donald prepared prior to the December 2006 will which provides bequests for James, James's children, and Donald's church.

¶ 10   Donald married Blanca in December 2005. James and his family were in attendance at the wedding. The complaint alleges that, in December 2006, Donald signed the purported will in the office of attorney William J. Peters. At that time, Donald was 84 years old and James was 61 years of age. The will states "I am married to Blanca DeHart. I have no children." The complaint alleges that Donald demonstrated he was of unsound mind when he signed the will and could not remember James, whom he had held out to the world as his son for nearly 60 years.

¶ 11   Following Donald's death in February 2007, Blanca caused the challenged will dated December 2006 to be filed. The complaint challenges the December 2006 will on grounds of testator incapacity (count I) and as being the product of undue influence by Blanca (count II). The complaint also alleges that Blanca fraudulently induced Donald into executing the new will (count III). Finally, the complaint seeks to set aside the purported will and compel a distribution of the estate under the prior will or pursuant to law or equity based on

intentional interference with expectancy (count IV).

¶ 12    In July 2009, Blanca filed a motion to dismiss the second amended complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2006)) on the grounds the complaint failed to allege sufficient facts to state a cause of action. In September 2009, the circuit court of Will County granted Blanca's motion to dismiss with prejudice. This appeal followed. In addition to appealing the judgment of the court, James also appealed the circuit court's ruling denying his request to compel the deposition of attorney Peters.

¶ 13                                    ANALYSIS

¶ 14    The circuit court dismissed with prejudice the second amended complaint which contained four counts alleging: (1) Donald's lack of testamentary capacity; (2) Blanca's undue influence over Donald in the preparation of his 2006 will; (3) fraudulent inducement by Blanca to procure Donald's will; and (4) James's entitlement to a portion of Donald's estate as his adopted son, either by a contract of adoption or through an equitable remedy. "A motion to dismiss pursuant to section 2-615 attacks the legal sufficiency of the complaint. [Citation.] A court reviewing an order granting a section 2-615 motion takes all well-pled facts as true. [Citation.] On review of a section 2-615 dismissal, the court must determine whether the allegations of the complaint, when interpreted in the light most favorable to the plaintiff, sufficiently set forth a cause of action on which relief may be granted. [Citation.] A dismissal pursuant to section 2-615 is reviewed *de novo*." *Uhlich Children's Advantage Network v. National Union Fire Co. of Pittsburgh*, 398 Ill. App. 3d 710, 714 (2010). We will address each of the four counts in the complaint in turn to determine whether the complaint stated a viable cause of action on each count.

¶ 15                            I. TESTAMENTARY CAPACITY

¶ 16    James first maintains on appeal that the trial court erred in granting Blanca's motion to dismiss count I for failure to sufficiently state a cause of action for lack of testamentary capacity. To state a cause of action for lack of testamentary capacity, a plaintiff must allege facts which demonstrate that, at the time the will was executed, the testator lacked sufficient mental capacity to know and remember who were the natural objects of his bounty, to comprehend the kind and character of his property, and to make disposition of his property according to some plan formed in his mind. *In re Estate of Sutera*, 199 Ill. App. 3d 531, 536 (1990). The natural objects of a testator's bounty include those people related to him by ties of blood or affection, *i.e.*, those who are or should be considered to be recipients of his bequests. *In re Estate of Roeseler*, 287 Ill. App. 3d 1003, 1013 (1997).

¶ 17    In support of his claim that Donald lacked testamentary capacity, James alleged the following facts: (1) he was Donald's only son; (2) Donald had treated James throughout James's life as his son; (3) Donald acknowledged to numerous third parties throughout his life that James was his son, including on May 21, 2003, when he listed James as his "son" on a pre-arrangement funeral agreement; (4) Donald and Virginia, James's natural mother, gave a birth certificate to James purporting to acknowledge that Donald was James's father;

(5) even after James confronted Donald with the fact that the birth certificate was not the same as one he requested from the registrar, Donald continued to insist that he had adopted James; and (6) Donald had executed a prior will acknowledging James as his son and James's children as his grandchildren. Accepting the well-pled facts as true, and interpreting each in the light most favorable to the plaintiff, the complaint sufficiently sets forth that James was a natural object, either by blood or affection, of Donald's bounty, who should have been considered as a recipient of a bequest. *Roeseler*, 287 Ill. App. 3d at 1013.

¶ 18 In addition to allegations that he was the natural object of Donald's bounty, James also needed to allege sufficient facts to maintain that Donald lacked the requisite mental capacity to know and remember James as his son. Here, the only allegation contained in the complaint to support that allegation was the statement contained in Donald's will stating that he had no children.[1] James maintains that this fact alone, in juxtaposition to the previously cited facts wherein Donald spent a lifetime acknowledging James as his son, is sufficient to support the allegation that Donald lacked the mental capacity to recognize James as his son. We agree. Interpreting the well-pled facts in the light most favorable to the plaintiff, a reasonable inference can be made that Donald was of unsound mind and memory when he executed the will. It is reasonable to infer from the facts as pled that Donald was of unsound mind and memory when he denied that he had a son given the fact that he had acknowledged James as his son for over 60 years. This inference is all the more reasonable in view of the fact that, if Donald had wished to exclude James from the bounty of his will, he could have easily done so by express words of disinheritance. See *Porterfield v. Lenover*, 310 Ill. App. 37, 40 (1941).

¶ 19 Moreover, a complaint need not state with specificity the nature of the testator's loss of sound mind or memory. It need only allege that the testator lacked the requisite mental capacity at the time the will was executed. It is well settled that a complaint alleging lack of testamentary capacity need not be more specific:

" 'The only material question, manifestly, under this allegation, was whether the writing produced was the product of an unsound mind and memory. The specific name applied to describe that unsoundness, the means whereby the unsoundness was caused, or how it came about that the unsound mind and memory caused this writing to be drawn and signed, were matters of evidence that need not be alleged, and, if alleged, need not be proved.' " *Sutera*, 199 Ill. App. 3d at 539 (quoting *American Bible Society v. Price*, 115 Ill. 623, 635-36 (1886)).

¶ 20 Here, count I of the complaint alleged that James was the natural object of Donald's bounty, that Donald had so recognized James as such throughout James's life, that Donald

---

[1]Blanca maintain that Donald's statement in his will, "I have no children," was a true statement. Thus, the complaint fails to state a cause of action. However, as this matter is before our court on a motion to dismiss for failure to state a cause of action, we must take all well-pled facts in the complaint as true. *Kehoe v. Saltarelli*, 337 Ill. App. 3d 669, 677 (2003). Thus, given the allegation in the complaint that James was Donald's son, the statement in the will, "I have no children," is, for purposes of ruling on James's motion, a false statement. It may, of course, ultimately prove to be a true statement as the litigation progresses.

failed to so recognize James at the time the will was executed, and that a reasonable inference therefrom was that Donald lacked the capacity of sound mind or memory to recognize James as such. We hold that James need not allege more to establish that he has a cause of action for lack of testamentary capacity. We find that the complaint stated a viable cause of action for lack of testamentary capacity. The circuit court, therefore, erred in granting the defendants' motion to dismiss count I of the amended complaint.

¶ 21                                   II. UNDUE INFLUENCE

¶ 22     James next maintains that his complaint pled sufficient facts to state a cause of action to contest the purported will based on undue influence by Blanca. The law regarding undue influence is well settled:

> "Undue influence sufficient to invalidate a will is that influence which prevents the testator from exercising his own free will in the disposition of his estate or which deprives the testator of free agency and renders the will more that of another than his own. The influence may be exerted at any time, but must be directly connected with the execution of the will and operate at the time the will is made. [Citation.] The *prima facie* elements of undue influence are: (1) a fiduciary relationship between the testator and a substantial and comparatively disproportionate beneficiary under the will; (2) a testator in a dependent situation in which the substantial and disproportionate beneficiaries are in dominant roles; (3) a testator who reposed trust and confidence in such beneficiaries; and (4) a will prepared or procured and executed in circumstances wherein such beneficiaries were instrumental or participated. [Citation.] Furthermore, the pleading of undue influence must contain a specific recital of the manner in which the free will of the testator was impaired at the time the instrument was executed. The mere conclusion that the testator was influenced by the dominant nature of the disproportionate beneficiary is insufficient." *In re Estate of Julian*, 227 Ill. App. 3d 369, 376 (1991).

¶ 23     Here, the complaint contained an allegation that Blanca held Donald's power of attorney. A power of attorney gives rise to a general fiduciary relationship between the grantor of the power and the grantee as a matter of law. *Simon v. Wilson*, 291 Ill. App. 3d 495, 503 (1997). Moreover, the complaint contained the factual allegation that, although Blanca and Donald had been married less than a year, Donald had placed all of his considerable assets in joint tenancy with Blanca. These factual allegations are sufficient to plead that Donald placed trust and confidence in Blanca, such that she gained significant influence over him and was in a position to dominate and control his will. *Simon*, 291 Ill. App. 3d at 503.

¶ 24     Additionally, the complaint sufficiently alleged that Blanca participated in the procurement of Donald's purported will and the alleged concealment of a previously executed will. While James may ultimately be unable to establish by clear and convincing evidence that Blanca enjoyed a position of influence and superiority over Donald, he has alleged sufficient facts at the pleading stage to state a cause of action. *Fichtel v. Board of Directors of the River Shore of Naperville Condominium Ass'n*, 389 Ill. App. 3d 951, 956 (2009) ("At the pleading stage, the trial court allowed for the possibility that the [plaintiff] could establish a factual basis to support a finding that [the defendant] owed them a duty *** ; however, after reviewing the depositions and documents obtained in discovery, the trial

court decided that the [plaintiff] had failed to establish such a factual basis.").

¶ 25　It is well settled that what constitutes undue influence cannot be specifically defined, but depends upon the fact and circumstances of each case. *In re Estate of Hoover*, 155 Ill. 2d 402, 411-14 (1993). In *Hoover*, our supreme court held that facts establishing undue influence may be wholly inferential and that "[f]alse or misleading representations concerning the character of another may be so connected with the execution of the will that the allegation that such misrepresentations were made to the testator may present triable fact questions on the issue of undue influence." *Hoover*, 155 Ill. 2d at 412. Moreover, as the *Hoover* court further noted:

> "Our courts have recognized that the substitution of one's will over that of the testator's original intent may be accomplished by misrepresentations and/or concealment of facts. [Citations.] Under these circumstances, the testator may act as if directed and guided by his own agency but that agency may have been overpowered by 'secret influences.' [Citation.] In a 'secret influences' case, plaintiffs may introduce circumstantial evidence to demonstrate that the influence was connected with and operative at the time of execution of the will and that the influence was directed towards procuring the will in favor of the beneficiary." *Hoover*, 155 Ill. 2d at 414.

¶ 26　The complaint alleges that Blanca made several misrepresentations to Donald concerning James's character, each of which was told to Donald shortly before the execution of the will. Specifically, the complaint alleged that Blanca lied to Donald by not telling him that James and other family members had called him on the telephone and had sent cards and letters to Donald, as well as by intercepting and destroying those cards and letters. James maintains these factual allegations are sufficient to infer that "false and misleading representations and/or concealment of facts" concerning his character were made and there existed "secret influences" at the time of the execution of Donald's will which directed him to favor Blanca.

¶ 27　As alleged in the instant matter, evidence that misrepresentations about the testator's son were made to the testator which had a direct effect on Donald's bequests was similarly present in *Hoover*. For example, the supreme court in *Hoover* noted evidence that the disinheritance coincided with the testator's receipt of the allegedly false information. *Hoover*, 155 Ill. 2d at 414. Similarly, the plaintiff asks this court to infer that Blanca's alleged statements about him and his lack of interest and concern for Donald actually influenced him to disinherit the plaintiff. Strength of the evidence aside, it is important to note that a motion to dismiss under section 2-615 is a challenge only to the legal sufficiency of the complaint. *Lozman v. Putnam*, 379 Ill. App. 3d 807, 821 (2008).

¶ 28　Here, James can adduce facts under which he would be entitled to the relief sought. He has alleged that the misrepresentations were made. He has alleged that he once shared a close relationship with Donald. The facts alleged in the complaint, specifically the family vacation, support finding that he and Donald shared a close relationship. Likewise, the facts alleged in the complaint, specifically Donald's funeral arrangements, support finding that Donald considered James his son in life and in death. When presented with a similar occurrence, our supreme court held that "it must be left to the jury to resolve the numerous issues of material fact *** and to determine, ultimately, whether [the testator] was unduly influenced by the defendants to disinherit [the plaintiffs.]" *Hoover*, 155 Ill. 2d at 415.

¶ 29     We find that James has alleged sufficient facts to state a cause of action for undue influence. We reverse the trial court's order granting Blanca's motion to dismiss the count challenging Donald's will based on undue influence (count II) and remand for further proceedings.

¶ 30                                III. TORT CLAIM

¶ 31     James next maintains on appeal that the circuit court erred in dismissing the counts against Blanca in her individual capacity for fraudulently inducing Donald to disinherit him and for tortious interference with his economic expectancy to inherit from Donald. To recover for tortious interference with an economic expectancy, a plaintiff must allege facts that support the following elements: (1) the existence of an expectancy; (2) the defendant's intentional interference therewith; (3) tortious conduct such as undue influence, fraud, or duress; (4) a reasonable certainty that the expectancy would have been realized but for the interference; and (5) damages. James argues that his complaint sufficiently pleads a cause of action for intentional interference with inheritance. *Roeseler*, 287 Ill. App. 3d at 1021.

¶ 32     However, if a will contest is available and would provide an adequate remedy, the action in tort for intentional interference does not lie:

"By allowing plaintiffs an opportunity during the probate proceedings to be heard and to present evidence regarding the tort actions, a further collateral attack on the probate decree in a later tort action in the law division would not be required. The trial court can hear all the evidence in one proceeding. We do not believe it is necessary for plaintiffs to exhaust their probate remedies before bringing an action in tort." *In re Estate of Jeziorski*, 162 Ill. App. 3d 1057, 1064 (1987).

¶ 33     Here, with the exception of the element of damages, James has alleged sufficient facts to meet a *prima facie* case for tortious interference with an economic expectancy. The allegation that a prior will existed which provided for James as Donald's son is a sufficient allegation of an expectancy and a reasonable certainty that the expectancy would have been realized but for the interference. Similarly, the factual allegation that Blanca secreted or destroyed the prior will, a factual allegation to be taken as true at this point in the proceedings, would satisfy the element of intentional interference by tortious conduct. As to the element of damages, the complaint is premature since the will contest remains a viable cause of action upon remand.

¶ 34     If, following remand, James succeeds in his will contest, the dismissal of the tort counts would be appropriate because the adequacy of probate relief would be undisputed. *Roeseler*, 287 Ill. App. 3d at 1021. If, however, James fails in his will contest currently before the probate court, he would then be able to proceed against Blanca with his action for tortious interference with an economic expectancy. *Roeseler*, 287 Ill. App. 3d at 1021-22. Accordingly, pending the outcome of the will contest, we find that dismissal of the tort counts in the instant matter was premature.

¶ 35                              IV. ADOPTION CLAIMS

¶ 36     James next argues in count IV of the complaint that Donald adopted him and he is,

therefore, entitled to share in Donald's estate. Specifically, James argues that his complaint pleads sufficient facts to state a claim of parentage based on a contract for adoption or, alternatively, a theory of equitable adoption. Blanca responds that James has not sufficiently pled facts to establish parentage under the Illinois Parentage Act of 1984 (Parentage Act) (750 ILCS 45/1 (West 2006)), or section 2-2(h) of the Probate Act of 1975 (Probate Act) (755 ILCS 5/2-2(h) (West 2006)).

¶ 37                                        A. Contract for Adoption

¶ 38        Blanca directs her argument to the requirements of the statutes and asserts that James has failed to allege that the prerequisites for a determination of parentage under the Parentage Act, or for an acknowledgment of paternity under the Probate Act (as construed in *U.S. Bank v. Lindsey*, 397 Ill. App. 3d 437, 454 (2009)), were met in this case. Blanca's arguments are misplaced. James is not claiming that Donald adopted him under the Parentage Act, nor is he seeking to establish an acknowledgment of paternity under the Probate Act. Instead, he argues that his complaint sufficiently pleads the elements of a contract to adopt, including performance, reliance, and consideration. James cites *Monahan v. Monahan*, 14 Ill. 2d 449, 453 (1958), wherein the court held that an oral contract of adoption was enforceable since "a contract to adopt, as any other fact, may be proved by circumstantial evidence, provided that evidence meets the requisite tests of sufficiency." *Monahan*, 14 Ill. 2d at 453.

¶ 39        James seems to argue that the "performance" required for a contract to adopt is that both parties express and demonstrate sufficient indicia of a parent-child relationship. In *Monahan*, the court found as follows:

> "In the case at hand the evidence indicates that the family relationship of parents and son clearly existed between the Monahans and plaintiff. They continually referred to each other as 'Son' and as 'Mother and Dad.' Neighbors and many relatives believed plaintiff had been adopted by the Monahans. Certainly plaintiff conducted himself as a dutiful child. The Monahans indicated to others that plaintiff's natural mother 'gave' plaintiff to them to adopt and agreed to execute any necessary consent. This is positively confirmed by accounts, notations and statements written by both Leonard Francis Monahan and Lucille Fern Monahan, his wife, as well as by their abortive attempts at legal adoption. The evidence of the contract as well as the intention to adopt plaintiff is clear and convincing." *Monahan*, 14 Ill. 2d at 453.

¶ 40        Blanca argues that all of the facts alleged in the complaint are insufficient to support a claim for a contract to adopt because the facts fail to allege the basic elements of a contract. Specifically, the complaint does not allege the consideration for the purported contract, identify the parties to the contract, or state the terms of the alleged agreement. In support of her argument, Blanca cites Illinois cases that have found a "contract to adopt" but did so based on the existence of a written agreement. See, *e.g.*, *Weiss v. Beck*, 1 Ill. 2d 420, 426 (1953). We note, however, that Blanca places too much emphasis on the lack of a written agreement in the instant matter. While it is true that in *Weiss* and the cases discussed therein, a written memorandum agreement of adoption existed, circumstantial evidence of the existence of an agreement to adopt may overcome the lack of a written instrument. *Monahan*, 14 Ill. 2d at 453.

¶ 41		Blanca also maintain that James's contract of adoption claim is deficient in failing to allege the existence or execution of a contract between Donald and James's natural mother and father. While it is true that the complaint does not specifically allege the existence of such a contract, it does allege sufficient facts, similar to those relied on by the *Monahan* court, to establish the existence of an actual contract to adopt. Moreover, we note that, even though the complaint fails to allege a contract to adopt entered into between James and Donald, it is possible to infer from the well-pled facts that the contract to adopt existed between Donald and James's natural mother, Virginia Louise Boswell, whom Donald married when James was an infant. *Monahan*, 14 Ill. 2d at 453. We note that the child who is the subject of an adoption contract would not be a party to the contract but would have the right to enforce the contract as an intended third-party beneficiary of the contract. *Soelzer v. Soelzer*, 382 Ill. 393 (1943).

¶ 42		Given that motions to dismiss pursuant to section 2-615 require an interpretation of the complaint in the light most favorable to the plaintiff, we find sufficient facts have been alleged in the complaint to establish the existence of a contract to adopt which James, as an intended third-party beneficiary, would have the right to enforce. We find, therefore, that the circuit court erred in dismissing James's adoption contract claim.

¶ 43							B. Equitable Adoption

¶ 44		As an alternative to the contract for adoption theory, James also maintains that Donald's actions toward him throughout Donald's lifetime amounted to an equitable adoption that Donald and his estate are now estopped from denying. Though Illinois has not expressly recognized the theory of "equitable adoption," no Illinois court has expressly rejected the doctrine either. See *In re Estate of Edwards*, 106 Ill. App. 3d 635, 637 (1982); *In re Estate of Staehli*, 86 Ill. App. 3d 1, 5 (1980).

¶ 45		As the *Edwards* court noted, "[i]n a number of jurisdictions, however, estoppel or quasi-contract considerations have been applied to establish an adoption where there has been clear proof of a contract, express or implied, between a child's natural parents or legal custodians and the foster parents, reliance upon the parent-child relationship, and performance of obligations under the *de facto* relationship." *Edwards*, 106 Ill. App. 3d at 637. The theory is particularly compelling where the adopting parent had taken steps to allow the perception to exist that the child had, in fact, been adopted. Under such circumstances, the doctrine of equitable estoppel would prevent the parent and those in privity with him from denying the fact of the adoption. *Edwards*, 106 Ill. App. 3d at 637.

¶ 46		Here, we find that James has alleged facts which would support a conclusion that Donald entered into an agreement with Virginia to adopt James and that he continued to acknowledge the existence of a parent-child relationship with James. Throughout James's life, Donald acted as if he had, in fact, adopted James. Prior to James's attempt to acquire a passport, he had no indication that he was not Donald's son, as Donald had done nothing inconsistent with a true parent-child relationship. The complaint alleges that two birth certificates exist. One birth certificate, given to James by Donald and Virginia, purports to establish that Donald had, in fact, adopted James. Even after James confronted Donald with the existence of two birth certificates, Donald continued to maintain that he had "legally"

adopted James and, for several years thereafter, acted in a manner completely consistent with the existence of a parent-child relationship by adoption. Given that Donald acted as if he had, in fact, adopted James, equity would prevent Donald and his estate from taking a contrary position. *Edwards*, 106 Ill. App. 3d at 637.

¶ 47　　We find, therefore, under the facts alleged in the complaint, that James has stated a cause of action for equitable adoption by estoppel as an alternative to his claim of adoption by contract. It was error, therefore, for the circuit court to dismiss count IV of the complaint.

¶ 48　　　　　　　　　　　　V. MOTION TO COMPEL

¶ 49　　Finally, James argues that the trial court erred in denying his motion to compel the production of documents and deposition of the attorney who drafted the purported will. He maintains that the court's order denying his motions are erroneous because the attorney-client privilege does not apply in a will contest. In *Hitt v. Stephens*, 285 Ill. App. 3d 713, 717-18 (1997), the court held:

"[T]he attorney-client privilege survives the client's death. [Citation.] The only context in which a client's death might affect the viability of the privilege is a will contest. [Citations.] The theory underlying this limited exception is that a decedent would (if one could ask him) waive the privilege in order that the distribution scheme he actually intended be put into effect." *Hitt*, 285 Ill. App. 3d at 717-18.

¶ 50　　Here, since the claim of testamentary capacity and undue influence are at issue, we also reverse the trial court's order denying James's motion to compel the deposition of attorney Peters and remand for further proceedings on the motion. The only ground for denying the motion was the attorney-client privilege. James's complaint is sufficient to state a claim contesting Donald's purported will based on lack of testamentary capacity and undue influence. Therefore, the exception to the attorney-client privilege may apply, but "[t]he party seeking disclosure from an attorney has the burden of establishing that the attorney-client privilege does not apply." *Hitt*, 285 Ill. App. 3d at 717. On remand, James must prove that the privilege does not apply in this case.

¶ 51　　　　　　　　　　　　　　CONCLUSION

¶ 52　　The order of the circuit court of Will County granting the defendant's motion to dismiss is reversed, and the cause is remanded for further proceedings consistent with this opinion.

¶ 53　　Reversed and remanded.

¶ 54　　JUSTICE McDADE, specially concurring:

¶ 55　　I concur with the majority decision because I agree with its basic rationale on all counts of plaintiff's complaint.

¶ 56　　I write specially to make the following observations concerning the majority decision. First, it is my belief that the plaintiff has waived his claim of lack of testamentary capacity by failing to argue it in his initial brief. Absent waiver, my position would be the same as

-11-

that of the majority. Waiver is, however, a limitation on the parties, not the court. *Reed v. Retirement Board of the Fireman's Annuity & Benefit Fund*, 376 Ill. App. 3d 259 (2007). Accordingly, I would disregard the waiver and concur with the majority in reversing count I.

¶ 57 Second, I believe plaintiff has also waived the claim of fraudulent inducement set out in count III because it, too, was not argued in his original brief. Because I would disregard the waiver on the basis of the previously cited authority and because I agree with the majority's analysis of the tort claim issue, I concur with the majority in reversing count III.

¶ 58 Third, count IV presents a problem for me. I cannot disagree with the majority's argument for the justification of an "equitable adoption" cause of action. I do not, however, believe the existence of such an action is necessary for a successful prosecution of plaintiff's claim and would leave the issue of whether it should be recognized to be resolved by the supreme court.

¶ 59 PRESIDING JUSTICE SCHMIDT, concurring in part and dissenting in part:

¶ 60 I concur with the majority's decision to reverse the dismissal of count I (testamentary capacity), count II (undue influence), and count III (fraudulent inducement/tortious interference with economic expectancy) and denying the motion to compel. I further concur with the majority's decision reversing the trial court's dismissal of count IV as it pertains to equitable adoption.

¶ 61 However, I dissent from the part of the opinion reversing dismissal of the allegations contained within count IV, which pertain to the alleged contract to adopt. I find plaintiff failed to sufficiently plead the existence of an enforceable contract.

¶ 62 A complaint based upon breach of contract must allege the existence of the contract, including allegations indicating an offer, acceptance and consideration, the plaintiff's performance of all contractual conditions required of him, the fact of the defendant's alleged breach, and the existence of damages as a consequence. *Nuccio v. Chicago Commodities, Inc.*, 257 Ill. App. 3d 437, 443 (1993). The general allegation that a contract exists without supporting facts is a legal conclusion that may not be admitted as true by a motion to dismiss. *Id.* If acceptance of an offer is oral, the specific facts supporting this theory of acceptance must be alleged. *Id.* at 444. Section 2-606 of the Code of Civil Procedure mandates that if a claim "is founded upon a written instrument, a copy thereof, or of so much of the same as is relevant, must be attached to the pleading as an exhibit or recited therein, unless the pleader attaches to his or her pleading an affidavit stating facts showing that the instrument is not accessible to him or her." 735 ILCS 5/2-606 (West 2008); *Velocity Investments, LLC v. Alston*, 397 Ill. App. 3d 296, 298 (2010).

¶ 63 Here, plaintiff fails to indicate whether he seeks to enforce a written contract or oral contract. Moreover, the majority acknowledges that he fails to even identify the parties to the alleged contract but dismisses that fact claiming "it is possible to infer from the well-pled facts that the contract to adopt existed between Donald and James's natural mother." *Supra* ¶ 41. "Included in the formation of a valid contract are offer and acceptance, consideration, and definite and certain terms." *Van Der Molen v. Washington Mutual Finance, Inc.*, 359

Ill. App. 3d 813, 823 (2005). Certainly, those definite and certain terms include the identity of the parties to the contract. As plaintiff failed to identify the parties to the adoption contract and whether it was oral or written, I find dismissal of that portion of his complaint by the trial court was proper.